**REALCO SERVICES, INC., et al.**

v.

**Thomas J. HOLT et al.**

**Civ. A. No. 77–4097.**

United States District Court,
E. D. Pennsylvania.

Sept. 5, 1979.

See also, D.C., 479 F.Supp. 867.

Andrew C. Hecker, Jr., Hecker & Maginnis, Philadelphia, Pa., for plaintiffs.

Arnold Levin, Adler, Barish, Daniels, Levin & Creskoff, Frederick C. N. Littleton, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The Court has twelve motions currently before it for decision in this case. Local Rule of Civil Procedure 16(b) states that no attorney shall "present to the Court vexatious motions . . . or shall otherwise so multiply the proceedings in a case as to increase unreasonably and vexatiously the costs thereof." After review of each of the twelve motions outstanding, the Court does not believe that any can be called "vexatious". On the other hand, many are not substantial enough to require discussion and will be dealt with in the accompanying Order. Certainly some might better have been resolved among counsel or perhaps withdrawn after further reflection. The Court notes the provisions of Local Rule 16 only to alert counsel that in the future the Court will refuse to consider any vexatious motions, and will, under the implied authority of Local Rule 16(c), order them stricken from the record.

By Memorandum and Order dated May 30, 1979, the Court ordered plaintiffs' lead counsel disqualified from further representation of the plaintiffs in this case. Most of the briefing of the instant motions was done by disqualified counsel. Nevertheless, the defendants will not be prejudiced by the Court's considering any of the pleadings of former counsel. Most of the motions involve purely legal issues which do not relate in any way to the prior representation. The briefs present arguments that any competent lawyer might have made in the circumstances of this case.

The discovery requests made by plaintiffs' former counsel present a more difficult question, because in theory the prior representation of certain of the defendants might have enabled counsel to "know what to ask for". After a careful review of the requests, however, the Court has found none that appears to be based on special knowledge. Given the facts in the plaintiffs' possession and the allegations of the complaint, any competent lawyer might have made similar requests.

Any prejudice to the defendants confidentiality interests was adequately cured by the May 30, 1979, Order of Disqualification.

## I.

■ The Objections of First Pennsylvania Bank, N.A., to a Deposition Subpoena are sustained, because of plaintiffs' failure to comply with Rule 30(b)(6) F.R.Civ.P. Plaintiffs' counsel may revise the subpoena to cure any defects, and shall attempt to negotiate a mutually agreeable scope for the subpoena with counsel for the Bank. Cf. Local Rule 25(d). For the guidance of counsel, the Bank's objections Nos. 1 and 2 appear meritorious; objection No. 3 appears not to be meritorious; and objection No. 4

is mooted insofar as any of the non-parties referred to therein have been made parties. Objection No. 4 may properly be made the subject of negotiations on the issue of burdensomeness.

## II.

■ The plaintiffs' Motion to Compel Answers to Interrogatories is granted as to Interrogatories 1(g–1), 2, 3, 4, 7, 8, 9, 10 and 11. The defendants shall file full and complete and responsive answers within thirty days of the date of this Order, or the Court will impose sanctions.

The interrogatories in question go to the heart of the case. After consideration of a similar motion to compel the Court has already ordered them to be answered. The defendants, however, filed patently insufficient answers, including objections unsupported by adequate explanations therefor, and unsupportable attempts to rely on Rule 33(c), F.R.Civ.P. These interrogatories must be answered and this litigation shall proceed, and the Court will take all appropriate steps to enforce timely compliance with this Order.

■ Interrogatory No. 5 stands on a slightly different footing, since it is really a request for production of documents. The request is massive, but the documents sought are relevant to the subject matter of this lawsuit. Rule 26(b)(1), F.R.Civ.P.

Nevertheless, the request as framed appears burdensome. Without prejudice to the plaintiffs' right to renew their request for items not granted, the Court orders the defendants to produce the documents requested in sub-paragraphs a, b, c, d, e, f, g, j, m, o, q, r, s of Interrogatory 5 within sixty (60) days of the date of this Order.

## III.

■ The plaintiffs' Motion to Strike Various Affirmative Defenses is denied. The Court has not been briefed, and will not speculate, as to whether a finding that the alleged maritime contracts did not exist would deprive it of subject matter jurisdiction, assuming (without deciding) incomplete diversity of citizenship. However, the presence of defenses disclaiming diversity do not prejudice the plaintiffs, and in the event that admiralty jurisdiction is found not to exist, such defenses will obviously be relevant.

## IV.

The plaintiffs' Motion to Dismiss the First and Second Counterclaims is granted.

■ The First Counterclaim alleges that the plaintiffs' agreement to join in this suit is a combination or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. For such a claim to lie, the defendants must allege that the plaintiffs' action is a "sham", intended not to pursue legitimate remedies in this Court, but instead unlawfully to harm the defendants' businesses. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). An example of such a claim might be where a group of plaintiffs jointly begin a commercial action simply to be in a position to dismiss the suit in exchange for the defendant's agreeing to enter into a price-fixing conspiracy with them.

The instant counterclaim, however, does not allege that the plaintiffs' primary purpose in bringing this litigation was to destroy the defendants' businesses. *California Motor Transport, supra,* establishes a *scienter* requirement for the type of antitrust violation alleged here. In that case the Supreme Court balanced the plaintiffs' First Amendment right of access to the courts (and the chilling effect that potential antitrust liability might have on that right) against the purposes of the Sherman Act, and held that the First Amendment does not protect court actions when "the real *intent* of the conspirators was not to invoke the processes of the administrative agencies and courts, but to discourage [the legitimate competitive activities of their competitors]. Such an intent would make the conspiracy 'an attempt to interfere with the business relationships of a competitor and the application of the Sherman Act would be justified.' *Eastern Railroad Conference*

*v. Noerr Motor Freight,* 365 U.S. [127] at 144 [, 81 S.Ct. 523, 5 L.Ed.2d 464]." *California Motor Transport, supra.,* 404 U.S. at 518, 92 S.Ct. at 615 (Stewart, J., concurring; the qualification was apparently adopted by the majority, 404 U.S. at 515, 92 S.Ct. 609) (emphasis in original).

The counterclaim at issue is very carefully and precisely drafted. The defendants have *not* alleged that the plaintiffs' primary (or "real") intent in filing suit was to injure the defendants' businesses. The counterclaim does, however, carefully allege that the "primary purpose" of the defendants and third-party defendants, Semack, Kavula and Castelbuono in procuring suit was to "destroy the business" of the defendants. The pivotal paragraph is Paragraph 195, where it is alleged that the plaintiffs "knew or had reason to know" of the primary purpose of Semack, Kavula and Castelbuono. Nowhere is it alleged that the *plaintiffs* intended to destroy the defendants' businesses. Significantly, there is no allegation that the plaintiffs and defendants are competitors, nor that the plaintiffs had any reason to wish to harm the defendants beyond the harm inflicted by recovery of a judgment.

■ As a rule, conspiracy must be pleaded with specificity. See, e. g., *Robinson v. McCorkle,* 462 F.2d 111, 113 (3d Cir. 1972). Such specificity is especially important where fundamental First Amendment rights may be chilled by the allegation. This Court has grave doubts about the wisdom of recognizing any but the most serious and carefully articulated claims of anticompetitive behavior in a counterclaim such as this. Virtually any two co-plaintiffs in a commercial lawsuit are vulnerable to the charge that they "conspired and agreed" to "harm the defendant's business" by bringing suit in the first place. Without a requirement that a party allege (in good faith compliance with Rule 11, F.R.Civ.P.) a *primary intent* to harm another's business, nearly every two-plaintiff commercial lawsuit could become an antitrust suit—a result that could not have been contemplated by Congress in enacting the Sherman Act.

The counterclaim must also be dismissed on an alternative ground. The plaintiffs assert that the defendants and they are not competitors, and the counterclaim itself does not allege that the parties are competitors. In their Answer to the Motion to Dismiss, the defendants implicitly admit as much. Hence, their claim does not properly invoke the "sham" exception first recognized in *Eastern Railroad Presidents' Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961):

"There may be situations in which a . . . campaign, ostensibly directed toward influencing governmental action is a mere sham to cover what is actually nothing more than an attempt to *interfere directly* with the business relationships of a *competitor* and the application of the Sherman Act would be justified." (emphasis added)

365 U.S. at 144, 81 S.Ct. at 533.

In *California Motor Transport, supra,* the complaint alleged that the purpose of the conspiracy in filing vexatious lawsuits was to "[put] their competitors, including plaintiff, out of business . . ." 404 U.S. at 511, 92 S.Ct. at 612. *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), and *Otter Tail Power Co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973) cited by the defendants, also involved competitors.

■ It is crucially important that *Noerr* and *California Motor Transport* recognized the possibility of an *exception* to First Amendment immunity, not a First Amendment exception to Sherman Act liability. Especially where First Amendment rights are involved, courts should be careful not to expand an exception beyond its original scope, absent some clear indication from the Supreme Court that the exception is not so limited. Thus far, the exception has been limited indeed, as the holding in *Noerr* (upholding immunity) made obvious.

In *California Motor Transport,* the Court recognized an exception to First Amendment immunity where the alleged sham lawsuits posed an *immediate* and *direct*

threat to a competitor and to competition. However, the Court also specifically reaffirmed that the First Amendment rights of association and petition include joint access to the courts for groups of commercial plaintiffs. It can hardly be inferred from that holding that other alleged restraints of trade *not* involving competitors are sufficient to invoke the exception so long as allegations of "sham-ness" are made. If such allegations were sufficient to trigger the sham exception, the Sherman Act exception would swallow the First Amendment rule.

Because the "sham" lawsuit exception has not been extended to include the type of claim asserted here, the claim must be dismissed with prejudice. Cf. *Miller & Son Paving, Inc. v. Wrightstown Twp. Civic Assoc.*, 443 F.Supp. 1268 (E.D.Pa.1978), aff'd, 595 F.2d 1213 (3d Cir. 1979).

■ The Motion to Dismiss the Second Counterclaim is not opposed by the defendants. The claim (malicious prosecution) has not matured, and is dismissed without prejudice.

## V.

The Motion of Defendants Semack, Kavula and MTS Agencies, Inc. to Dismiss the Cross-Claims and Third-Party Claims is denied.

■ Rule 4(f), F.R.Civ.P., is a federal grant of jurisdiction over the persons of Rule 14 or Rule 19 defendants who are located within 100 miles of the courthouse. The "minimum contacts" requirement of due process need not be satisfied independently. *Coleman v. American Isbrandtsen Lines, Inc.*, 405 F.2d 250 (2d Cir. 1968).

■ The defendants' antitrust cross-claim is colorable. Semack, Kavula and MTS Agencies are alleged to have conspired to procure litigation against the defendants for the primary purpose of destroying the defendants' businesses. It is not alleged that the third-party defendants actually filed suits themselves. Given that fact, little, if any, First Amendment immunity attaches to the third-party defendants' con-

duct, and that alleged conduct is actionable under the Sherman Act.

■ One possible difficulty in establishing such a claim requires comment. Semack and Kavula appear to be officers of MTS Agencies. It is well established that a conspiracy cannot be based on an agreement between a corporation and its officers, agents or employees. *Morton Buildings of Nebraska v. Morton Buildings, Inc.*, 531 F.2d 910, 917 (8th Cir. 1976) and cases cited. Cf. *Goldlawr, Inc. v. Shubert*, 276 F.2d 614, 617 (3d Cir. 1960). A possible exception to the rule exists where the employees are acting beyond the scope of their employment or for their personal interests. *Johnston v. Baker*, 445 F.2d 424 (3d Cir. 1971). However, the Court has no clear picture of the structure of MTS Agencies nor of Semack's and Kavula's activities, and the defendants, as non-moving parties, are entitled to rely on their opponents' failure to make a record.

The cross-claim may also fail to state a cause of action if Semack, Kavula and MTS Agencies are not competitors of those *with* whom they have conspired, *Mastandrea v. Gurrentz International Corp.*, 65 F.R.D. 52 (W.D.Pa.1974), but, again, the record is unclear on that point. Any further action by the Court must await further development of the facts.

One factual representation made by counsel for the defendants in his answering papers requires clarification. At p. 5 of defendants' Answer to the Motion to Dismiss counsel represented that Holt, Gloucester Shipping and Worldwide Marine "have never had any equity or debt interest in nor were they officers or directors of MTS or Agencies". The contract under discussion in the Memorandum contained an understanding that *as of May 6th, 1977*, Holt and the named companies had no such interest, and the Holt affidavit at Paragraph 14 simply restates the terms of the contract. Neither document states that no such interests have *ever* existed.

The Court assumes that any ambiguity was unintentional, and not intended to mis-

lead the Court or the parties. However, on an issue that is so central to this litigation, the Court must order either an amendment to the Holt affidavit stating that neither Gloucester, Worldwide nor Holt has *ever* had any debt, equity or managerial (officer or director) interests in MTS and MTS Agencies, or a statement from counsel retracting the statement at p. 5 of the brief.

Finally, the releases executed in favor of Semack, Kavula and MTS Agencies cannot be given effect at this stage of the case. If the defendants' allegations of material breaches of the agreement of which the releases were allegedly a part are true, the defendants may be able to avoid the effect of the releases, *Diesel Heat and Power, Inc. v. Dixon Marine Industrial Power Transmission, Inc.*, 232 F.2d 217 (5th Cir. 1956), especially if the consideration recited in the releases was not the true consideration for their execution. Thus, the third party defendants' Motion to Dismiss the Cross-Claims and Third-Party Claims on grounds of release must be denied.

### VII.

■ The defendants' motion for Leave to Amend the Third-Party Complaint is denied. The motion is, in reality, a Motion for Leave to Join a Third-Party under Rule 14(a), and is as such untimely under Local Rule of Civil Procedure 24(a). That Rule makes mandatory (except in extraordinary situations), the filing of a third-party complaint within six months of the date of the defendants' answer. The Rule has not been complied with here, and no extraordinary circumstances exist which justify disregarding it.

In any event, leave to join must be denied on the merits. Joinder of counsel for MTS Agencies would inject unnecessary and unmanageable complications into the case. Issues of attorney-client and work product privilege would all but stall the discovery process, especially considering the past record of the present parties on discovery matters. Furthermore, the attorney-client issues would create serious difficulties at trial.

Plaintiffs' counsel have already been disqualified with concomitant delay. Joinder of the third parties' counsel would be likely to exacerbate that delay while all of the partners in the third-party defendant law firm retained counsel.

Finally, there is no indication whatsoever that the defendants cannot obtain complete relief from the alleged coconspirators (Semack, Kavula and MTS Agencies) who are already in the case. Under the circumstances, joinder would be unreasonable, and must be denied.