Christa JOHNSON, Plaintiff-Appellant-Petitioner,

v.

Hector CALADO and Brigido Calado, Defendants-Respondents.

Supreme Court

*No. 89–1067–FT. Argued October 4, 1990.—Decided January 23, 1991.*

(Also reported in 464 N.W.2d 647.)

For the plaintiff-appellant-petitioner there were briefs by *Richard F. Tyson,* Milwaukee and oral argument by *Mr. Tyson.*

For the defendants-respondents there was a brief by *David A. Wanta,* Brookfield and oral argument by *Mark M. Leitner* and *Charne, Claney & Taitelman,* Milwaukee.

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals[1] which affirmed a judgment of the circuit court for Jefferson county, Arnold Schumann, circuit judge. The judgment was one of dismissal of a malicious prosecution action brought by Christa Johnson. Both the circuit court and the court of appeals held that, in Wisconsin, no claim for malicious prosecution was stated when the complaint failed to allege a distraint of, or interference with, the plaintiff's person or property as the result of an underlying action, although that underlying action was malicious and brought without probable cause. We affirm.

Using the formulation of the rule as originally posited as syllabus headnote 6 in *Luby v. Bennett,* 111 Wis. 613, 87 N.W. 804 (1901), and, as adopted by this court in *Myhre v. Hessey,* 242 Wis. 638, 643, 9 N.W.2d 106 (1943), 150 ALR 889 (1944), we hold that "a civil action, maliciously prosecuted, where neither the person nor the

---

[1] *Johnson v. Calado,* No. 89–1067–FT unpublished slip op. (Wis. Ct. App. Nov. 9, 1989).

property of the defendant is interfered with inflicting special damages to him, will not sustain an action for malicious prosecution." In so holding, we retain the so-called "English," or minority, rule applicable to the elements to be pleaded and proved in an action for malicious prosecution.

The case arises out of a charge of theft. Christa Johnson, a waitress at Donny's Supper Club, believed that Hector Calado, a busboy, was stealing tip money that had been left for her by diners. Christa had been warned "to watch out for Hector." Christa, to test her belief, put two dollar bills on a table after the customers had left. She then watched the table and, after observing that only Hector approached the table, went to the table and found one dollar was gone. She immediately reported this to her employer, stating that only Hector could have taken it. Hector Calado was fired.

Brigido Calado, Hector's father, as guardian for Hector, then a minor, brought an action for slander against Johnson, claiming that she maliciously communicated a false statement that "Hector Calado is a thief."

The case was tried without a jury before Judge Harold Eberhardt, circuit judge for Jefferson county. Judge Eberhardt found that the statement of Christa Johnson was substantially true and, relying upon *Schaefer v. State Bar of Wisconsin,* 77 Wis. 2d 120, 252 N.W.2d 343 (1977), held that truth was a complete defense. Additionally, in view of the relationship between Hector, an employee, and the firing employer, the judge determined that the communication to the employer was conditionally privileged. He also found that Christa's actions were not motivated by malice. The complaint of Hector and Brigido Calado was ordered dismissed, and judgment was entered for Christa Johnson, awarding her statutory

costs and disbursements.[2]

On July 28, 1988, approximately three years after the episode of the missing one dollar tip, Christa Johnson brought this action for malicious prosecution, alleging that the Calados had instituted the defamation action knowing that no slander had been committed, that the action was malicious and was without any cause, that the action was terminated in her favor, and that the action constituted a malicious prosecution by the defendants Hector and Brigido Calado. She alleged:

> That as a result of said malicious prosecution the Plaintiff was obliged to defend herself and to expend money and time in said defense, all in an amount to be proven upon the trial; that she lost time from the ordinary pursuits in her life and home, and that the quality of her life was diminished thereby, all to her great damage . . ..

---

[2]A few days after the entry of the judgment, Christa Johnson brought a motion, pursuant to the provisions of sec. 814.025, Stats., asking that the court find the Calados' defamation action to be frivolous. The motion was denied, Judge Eberhardt stating: "[T]here was evidence on both sides dealing with the merits . . .. And the test of whether an action is frivolous . . . is . . . whether there was a complete absence of any prospect of success or merit to the case."

In addition to bringing a motion under sec. 814.025, Stats., Christa Johnson, during the pendency of the defamation case, brought a separate action against the Calados, claiming a tortious interference with her employment contract. That action was dismissed on the Calados' motion for summary judgment; and on a counterclaim, the Calados obtained an order that Johnson's suit for tortious interference with the employment contract was frivolous. Johnson's attorney was assessed costs in the sum of $5,148.02 by Judge Ralph Adam Fine, circuit judge, who tried the tortious interference claim.

In addition, she asked for punitive damages and that the action be tried to a six-person jury.

The Calados moved for summary judgment. They submitted affidavits that purported to show that Johnson's complaint was subject to the defense of collateral estoppel because Judge Eberhardt, in the underlying slander action, although resolving the entire lawsuit in favor of Johnson, stated in his opinion that there was some merit in the Calados' complaint, and because Johnson's post-trial sec. 814.025 motion asserting that the Calados' action was frivolous was denied.[3] Judge Schumann did not address these arguments. Rather, he appropriately resorted to the approved methodology in determining a motion for summary judgment.

■

*Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987), summarizes the duties of a trial court in resolving a motion for summary judgment. "The first step in that methodology requires the court to examine the pleadings to determine whether a claim for relief has been stated." Clearly, if no claim for relief has been stated, it thereupon becomes the duty of the trial court to dismiss the complaint. Any possible conflict in respect to evidence becomes irrelevant once that conclusion is reached.

■

Judge Schumann relied upon this court's holding in *Schier v. Denny,* 9 Wis. 2d 340, 345, 101 N.W.2d 35 (1960):

---

[3]These arguments have not been reasserted or placed in issue either on appeal or on review to this court. Accordingly, we do not comment upon the validity or invalidity of these estoppel arguments asserted in the circuit court.

[A] cause of action for malicious prosecution is not stated by a complaint which does not allege interference with either the plaintiff's person or his property inflicting special damages to him, and an allegation that plaintiff incurred expense in defending himself against the prosecution alleged to be malicious is not an allegation of such special damage within the contemplation of law.

He then inspected the pleading to determine whether Christa Johnson's complaint alleged interference with the plaintiff's person or her property which inflicted special damages. After doing so, he concluded that the complaint contained no such allegations and it was accordingly insufficient to state a claim under the standards of *Schier v. Denny*. He therefore dismissed the complaint.

He reasoned that there was no allegation of interference with either the person or property and that, hence, there could be no special damages arising from such interference as required by Wisconsin law. He pointed out that general expenses in defending a lawsuit, loss of time, and the diminution of the quality of life were not special damages flowing from the interference with person or property. Accordingly, whether the underlying lawsuit was malicious and without probable cause never had to be addressed by Judge Schumann. While these elements of the cause of action were sufficiently alleged, those allegations are irrelevant if the requisite special damages were not pleaded.

The circuit court's judgment dismissing the complaint was affirmed by the court of appeals. The court of appeals stated that the Supreme Court of Wisconsin has adopted the "minority" or "English" rule that a malicious prosecution action founded upon a prior civil suit

will not lie "where neither the person nor the property of the defendant in such prior action had been interfered with so as to inflict special damages upon him." *Johnson v. Calado,* No. 89-1067-FT, unpublished slip op. at 2-3 (Wis. Ct. App. Nov. 9, 1989).

The court of appeals denominated this as the "minority" rule and stated that, were it not bound by the prior precedents of this court, it would adopt the "majority" rule as stated in the Restatement (Second) of Torts:[4]

The court of appeals, while expressing a preference for the "majority" position, stated no reasons for that preference other than it was the rule of the majority.[5]

---

[4]Majority rule:

§ 674.  General Principle

One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if

(a)  he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and

(b)  except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

Minority rule:

§ 677.  Civil Proceedings Causing an Arrest or a Deprivation of Property

One who by taking an active part in the initiation, continuation or procurement of civil proceedings against another causes him to be arrested or deprived of the possession of his land or chattels or other things is subject to liability to him for the harm done thereby if

(a)  he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim on which the proceedings were based, and

(b)  except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

[5]Whether a majority of the legal jurisdictions of the United

453

The court of appeals affirmed the judgment on the basis of this court's prior decisions requiring that, to prevail in an action for malicious prosecution, the plaintiff must, in addition to pleading and proof of the other elements of the action, plead and prove special damages caused by interference with the person or property.

We affirm the decision of the court of appeals, but because of that court's expressed preference for the Restatement's "majority" rule, we take the opportunity to reexamine the origins of this jurisdiction's rule and the reasons expressed in its justification to determine whether the policy pronouncements of this court in past years favoring the special damages rule continue to be valid.

The rule requiring special damages has been called the "English" rule. This is based upon the supposition that English jurisprudence ordinarily did not permit a cause of action for malicious prosecution because it was assumed that the prevailing party in the underlying action had received full costs and substantially full compensation for the expenses and attorney's fees that were incurred as the result of being maliciously sued without probable cause. Hence, only in exceptional cases of special damages stemming from certain kinds of restraints of person or property caused by the malicious action

States adhere to the formulation of the rule in sec. 674 of the Restatement is open to question. The permutations and combinations that are revealed in the decisions leads this writer to question the bald assertion of the Restatement. To the extent any trend is perceptible from recent cases, there seems to be a trend or reaffirmation of the English rule requiring special damages arising out of interference with person or property. However, whether the rule is a majority one or not is irrelevant to our determination of the better judicial policy in light of Wisconsin's juridical history and this court's view of the merits of the two rules.

would a cause of action lie.[6] Whatever the true situation might have been in England, it is obvious that statutory costs and statutory attorney's fees as provided in the various jurisdictions of the United States do not provide amounts that are either fully compensatory to the recipient or are a meaningful deterrent to the party who pays. Hence, to the extent a rule disallowing or limiting the right to bring an action for civil malicious prosecution is based on the theory that the winner has already been compensated, it is based upon sheer fiction.[7]

This court, however, has repeatedly stated sound judicial policy reasons for adhering to a rule that limits the right to bring actions for malicious prosecution.

The first meaningful discussion of the problem by this court appears in *Luby v. Bennett*, 111 Wis. 613, 87 N.W. 804 (1901). Because *Luby* never addressed the question of whether a malicious prosecution could lie in the absence of restraints to person or property, the discussion is mainly *obiter dictum* in its pertinence to the issue of special damages which is the gravamen of this review. The *Luby* case traced the origins of the English rule. Justice Roujet Marshall, the author of *Luby,* leads us through the peregrinations of precedent and leaves the reader in doubt as to what is the majority rule and

[6]For a discussion of the origin and evolution of the English rule see *Kolka v. Jones,* 6 N.D. 461, 71 N.W. 558 (1897), and *Luby v. Bennett,* 111 Wis. 613, 621, 87 N.W. 804 (1901).

[7]As is pointed out in W. Keeton, *Prosser and Keeton on Torts* (5th ed. 1984), p. 889, n.3, "Where, however, attorneys' fees are awarded under statute, as is often true in civil rights cases, this reason may have become sound although it was spurious when originated." Perhaps the same may be said in respect to statutory awards or sanctions under rules that are now available for frivolous actions. The possible effect of such rules and statutes is discussed subsequently in this opinion.

what is the minority rule in respect to special damages. Justice Marshall points out that courts generally have failed to analyze the requisite elements of a malicious prosecution action on the basis of sound judicial policy but rather address the question upon what is "supposed to be the weight of authority. The result is that on an important branch of the law . . . the courts of the states of this Union, and the text-writers as well, are in as much confusion as in respect to any other branch of the law that could be suggested." *Id.* at 619–20.

Justice Marshall wrestled with the question of whether any actions for malicious prosecution should be allowed at all, citing the English rule, which assumes that one who maliciously and without probable cause brings an action is punished by the payment of costs in the original action.

In the *Luby* case, the original underlying malicious action was by one partner against another seizing the assets of a partnership and converting them to the malicious partner's possession. In *Luby*, malice and want of probable cause are conceded. The only issue appears to be whether the rule would require that damages be the result of the seizure of the property of the defendant in the original suit. The upshot of *Luby* is clearly that, if there is such a seizure, an action for malicious prosecution may proceed. Because of the clear allegation of the seizure, the order of the trial court overruling the demurrer was sustained. *Luby*, therefore, did not have to decide whether an action for malicious prosecution would lie in the absence of such seizure.

Nevertheless, the rule which *Luby* posited in syllabus headnote 6,[8] but specifically did not adopt, was that

---

[8] 6. The general rule which prevails in England, and has the greater support of judicial and elementary authority in this country, is that a civil action, maliciously prosecuted, where

a civil action maliciously prosecuted in which neither the person nor the property of the defendant is interfered with, inflicting special damage to him, will not sustain an action for malicious prosecution. *Luby* thus never decided whether an action for malicious prosecution could proceed where there was no seizure of person or property.

This statement of syllabus 6 was quoted in *Luebtow v. Schraeder,* 226 Wis. 437, 443, 227 N.W. 124 (1938), with apparent approval, but in *obiter dictum,* for the decision was predicated on special equitable rules that were concerned with false allegations of lunacy and of juvenile delinquency.

In 1943, *Myhre v. Hessey,* 242 Wis. 638, 9 N.W.2d 106, specifically referred to syllabus 6 of *Luby* and, for the first time, adopted the rule therein stated, requiring that to maintain an action for malicious prosecution there be special damages stemming from the seizure of the person or the person's property in the underlying action.

The *Myhre* court did so, fully cognizant that the rule adopted was contrary to that preferred by the Restatement (Second) of Torts. Hence, it went to great lengths to demonstrate that the rule requiring special damages was the better rule than that advocated by the Restatement. The court stated:

> . . . it is for the court now to adopt that rule [syllabus 6] or the rule of the Restatement, whichever appears to the court more in accord with public policy. The matter seems to depend on which the court considers the less evil: Subjecting individuals to the expense of defending groundless civil actions prose-

---

neither the person nor the property of the defendant is interfered with inflicting special damages to him, will not sustain an action for malicious prosecution.

cuted maliciously and without probable cause, or subjecting individuals who lose lawsuits which they institute to the possibility of malicious prosecution actions because they lost them, and subjecting the courts and the public to a possible flood of such actions that may follow adoption of the Restatement rule. In 34 Am. Jur. p. 707, sec. 10, it is stated, in effect, that in this country the law is in conflict as to whether the rule of Syl. 6 or of the Restatement obtains. It is pointed out in sec. 9 of the text last cited that prior to the enactment of the statute of Marlbridge, 52 Henry III, enacted in 1267, an action lay for malicious prosecution of a civil action without probable cause; that that statute gave costs to the successful defendant, not as a general statute regulating costs, but "to afford a summary remedy to the successful defendant in place of the existing right of action to recover his damages on account of the malicious prosecution of a civil action against him," and that after the passage of that statute the rule of Syl. 6 was generally applied by the English courts because the costs recovered were considered adequate compensation for the damages suffered. Sec. 10 further points out that many American courts apply the rule of Syl. 6 while many others reject it in favor of the rule declared in the Restatement. Some of the latter cases apply the Restatement rule on the express ground that the costs imposed under the English practice include attorney fees both for preparing the basic case for trial and for trying it (*Pope v. Pollock,* 46 Ohio St. 367, 21 N.E. 356, 4 L.R.A. 255), while in this country generally no attorney fees are included in the costs and where they are, as in Wisconsin, they are so small as to bear no relation to the expense of the plaintiff in defending as costs under the English practice, and the rule of Syl. 6 should therefore not be adopted. It should be noted that the statute of Marlbridge was enacted to cure a multitude of evils that

458

existed in the administration of justice in England at the time of its enactment. It is divided into thirty-nine headings, each dealing with a separate subject. One of those evils apparently was the malicious prosecution of civil actions without probable cause. The only reference to malicious prosecutions that we find in the statute is in par. II of cap. VI thereof, p. 60, vol. 1, English Stats. at Large, where the English translation given reads as follows:

> "And if any chief lords do maliciously implead such feoffees, faining this case, namely, where the feoffments were made lawful and in good faith, then the feoffees shall have their damages awarded, and their costs which they have sustained by occasion of the foresaid plea, and the plaintiffs shall be grievously punished by amerciament."

Thus under that statute costs were not only imposed that "grievously punished" the defendant "by amerciament" but plaintiff's damages not covered by the imposition of costs were also awarded. This view is expressly declared in *Kolka v. Jones, supra,* where at page 560 of the North Western Reporter opinion the development of the rule of Syl. 6 under later statutes is elaborated.

We conclude that as a matter of public policy the rule of Syl. 6 is the sounder, and we therefore adopt it.

*Myhre* at 647–649.

It is apparent that the choice was consciously and conscientiously made by this court almost fifty years ago. The rule was adopted because the court concluded that there would be freer access to the courts if prospective litigants were not easily subject to malicious prosecution suits were their actions to fail. Thus, as a matter

459

of judicial policy, the Wisconsin court preferred the additional special damage-seizure requirements to make more difficult the bringing of malicious prosecution actions that would discourage persons from having access to the courts. The policy factors weighed and balanced then are no different than they are now. The rule has worked well for fifty years. While mere antiquity does not justify a rule, its successful and just operation for a long period of time does.

The rule was again addressed and reaffirmed in *Holmlund v. Zierke*, 266 Wis. 219, 63 N.W.2d 45 (1954); *Novick v. Becker*, 4 Wis. 2d 432, 90 N.W.2d 620 (1958); and in *Schier v. Denny*, 9 Wis. 2d 340, 101 N.W.2d 35 (1960). *Novick v. Becker* recognized once more that the rule the Wisconsin court relied upon in *Myhre* and came to the same conclusion in adopting the special damages minority rule.[9]

Thus, it is clear that the so-called minority rule—the rule that, to sustain an action for malicious prosecution in a civil context, an essential allegation of the pleading is that there be special damages occasioned

[9] *Aalfs v. Aalfs*, 246 Iowa 158, 66 N.W.2d 121 (1954), and *Petrich v. McDonald*, 44 Wash. 2d 211, 266 P.2d 1047 (1954).

We note that the supreme courts of Ohio and of Washington have recently reexamined the rule. *Crawford v. Euclid National Bank*, 19 Ohio St. 3d 135, 483 N.E. 1168 (1985); *Gem Trading Co., Inc. v. Cudahy Corp*, 92 Wash. 2d 956, 603 P.2d 828 (1979). Each decided for policy reasons to retain the special damages rule relating to seizure of the person or of property in preference to the Restatement "majority" rule. It can hardly be said that the Wisconsin rule represents a "creed outworn." There is no perceptible trend toward the abandonment of the minority rule. Furthermore, it is noteworthy that the states adopting and adhering to the minority rule have done so only after a careful balancing of judicial policy factors.

by the seizure or distraint of the person or of property—after numerous appeals has become engrained in Wisconsin law.

It was adopted deliberately after having first been posited in *Luby* in 1901 as a possible rule for the Wisconsin courts. Then, in response to Justice Marshall's admonitions in *Luby* that the proposed rule be carefully considered, the rule and its policy implications were carefully addressed in a series of subsequent cases decided by this court over a course of sixty years. Our rule is no inadvertent one. We see no reason to reconsider it now or to extensively reiterate the judicial policy reasons supporting it which still obtain and are as persuasive now as when first stated.

We do not imply that there is no argument for the Restatement rule, but hypothetical advantages do not outweigh the salutary experience Wisconsin has had with the rule. We decline to reconsider the rule and reaffirm it as originally adopted in *Myhre v. Hessey.*

■

While we do not reconsider the policy factors that led to the adoption of our rule, we reiterate a few of the most significant ones. The most critical factor in favor of the special-damages limitation is that it allows free access to the courts without fear of reprisal if one's legal action should fail. *See, Ammerman v. Newman,* 384 A.2d 637, 641 (D.C. App. 1978). Moreover, the rule limits the number of suits brought for vexatious purposes. *Gem Trading Co. v. Cudahy Corp.,* 92 Wash. 2d 956, 964, 603 P.2d 828 (1979). It should be noted that these arguments may be contradictory, for the limitation on suits for malicious prosecution may leave unchecked vexatious underlying actions.

The policy argument that there should be a remedy for every wrong, our prior holdings concluded, was out-

461

weighed by the policy that litigants should have the right to sue for legal redress without the substantial likelihood or fear of retaliatory litigation. The Wisconsin or "minority" rule indeed may leave some wrongs unremedied, but it should be pointed out that there can now be recourse under the provisions of secs. 802.05, 809.25, and 814.025, Stats., all of which allow costs and "reasonable" attorney fees where a party is victimized by frivolous, malicious, or harassing actions or counterclaims. There is a remedy for these wrongs. These provisions, however, do not purport to provide full compensation for damages, as might be afforded under either the minority or majority rule. These statutes and rules may, however, in a proper case, provide full compensation for reasonable attorney fees necessary to defend against a frivolous claim. It should be noted also that the motions or claims for frivolous actions take place within the context of the original action, usually before the original judge, obviating the commencement of a new action, thus furthering judicial efficiency.[10] We, however, do not purport to address comprehensively the remedies that might be afforded by the frivolous action rules and statutes. They are not in issue in this case. But it does appear to us that the general problem posed by malicious, vexatious, and frivolous suits must be considered not alone in the context of malicious prosecution precedents of the common law but also in the context of the recently afforded remedies.

---

[10]It should be noted that sanctions may lie where counsel is found to be in violation of the frivolous or malicious action procedures. *See, Sommer v. Carr,* 99 Wis. 2d 789, 299 N.W.2d 856 (1981). This additional protection is afforded *de hors* the common law.

We conclude that there is no reason to reconsider the rule adopted in *Myhre v. Hessey,* repeatedly reaffirmed, that requires that one asserting a claim for malicious prosecution plead special damages that are the result of interference with either the person or property. Because the plaintiff failed to allege such a seizure of either person or property and that such a seizure had caused her damages, the plaintiff's cause of action is fatally defective and was properly dismissed.

*By the Court.*—Decision affirmed.