BADGER CAB COMPANY, INC., and Tom Helms, Counter Claimants-Respondents-Cross Appellants,

v.

Theodore N. SOULE, Bruce Algozin, Arrick Beher, William Black, David Jensen, Kim Jeanine Kreiger, James Cole, Richard Bolton and Haight & Hofeldt, Counter Defendants-Appellants-Cross Respondents.

Court of Appeals

*No. 90–2212. Submitted on briefs January 1, 1992.—Decided October 29, 1992.*

(Also reported in — N.W.2d —.)

For the counter defendants-appellants-cross respondents the cause was submitted on the briefs of *Timothy J. Casper* of *Coyne, Niess, Schultz & Becker, S.C.* of Madison.

For the counter claimants-respondents-cross appellants the cause was submitted on the briefs of *Simon M. Karter* of *Wendel & Center* of Madison.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J.   We granted a petition for leave to appeal from an order denying the appellants' motion to dismiss three of the respondents' five counterclaims, or,

in the alternative, to stay discovery and trial of the counterclaims pending the resolution of the principal action. Respondents cross-appeal from the trial court's decision to withhold a ruling on the remaining counterclaims because they were premature.

We conclude that the respondents may not bring their claims against opposing counsel until after the principal lawsuit is terminated because of the negative impact such claims would have upon attorney-client relationships. Consequently, we direct the trial court to dismiss all counterclaims against opposing counsel. We also conclude that three of the counterclaims state a claim against the remaining appellants while the other two counterclaims are premature. Therefore, we affirm in part and reverse in part.

## I.  BACKGROUND

When this action commenced on September 30, 1988, appellants Soule, Algozin, Beher, Black, Jensen, and Kreiger were taxicab operators and lessees (hereinafter, "the drivers") for the respondent Badger Cab Company, Inc.[1] Appellants Cole and Bolton, who were associated with the law firm Haight & Hofeldt, were their attorneys. The drivers filed their first amended complaint on October 18, 1988, and a second amended complaint on January 9, 1989. The second amended complaint included the following allegations: (1) that the drivers were "dealers" under the Wisconsin Fair Dealership Law, ch. 135, Stats.; (2) that the company had violated various provisions of ch. 135 in terminating Jensen and in failing to provide ninety-days' prior writ-

_____

[1]Soule and Algozin were the only drivers named in the original complaint. Jensen had been terminated by the company in June 1988.

ten notice of increased lease charges; and (3) that the company had conspired with the city of Madison to set cab fares in violation of sec. 133.03, Stats., and 15 U.S.C. § 1.

The second amended complaint was followed by a series of motions which are still pending. The company moved to strike the second amended complaint because it was filed without the trial court's leave or the company's written consent, contrary to sec. 802.09, Stats. In response, the drivers sought leave to file the second amended complaint. The company also filed motions to compel discovery, or, alternatively, to find both amended complaints frivolous within the meaning of sec. 802.05, Stats., and the first amended complaint frivolous within sec. 814.025, Stats.

Finally, on March 30, 1989, the company filed its amended answer and counterclaim which is the subject of this appeal. The counterclaim joined Tom Melms, the company's president and sole shareholder, as a counterclaimant, and Attorneys Cole and Bolton and the firm Haight & Hofeldt as impleaded counterclaim defendants along with the drivers. It alleges five separate causes of action against the counterclaim defendants: (1) that they combined for the purpose of wilfully or maliciously injuring Melms in his business, contrary to sec. 134.01, Stats.; (2) that they intentionally sought to interfere with the contractual relations between the company and Melms; (3) that they engaged in a civil conspiracy to interfere with such contractual relations; (4) that they abused legal process; and (5) that they engaged in a civil conspiracy to abuse legal process.

In addition to the facts set out above, the counterclaimants make a number of claims. First, they assert that several of the drivers had harbored resentment for Melms and desired to remove him as president and

owner. They allege that several drivers made statements to newspaper reporters that they expected their lawsuit to bankrupt Melms and/or the company. In addition, one driver allegedly stated that the purpose of the suit was to "make Melms go away."

With respect to the second amended complaint, the counterclaimants assert the following: (1) that the company did not receive notice or a copy of the complaint until January 19, 1989, when the drivers provided responses to interrogatories concerning the first amended complaint; (2) that the drivers used the complaint to avoid answering interrogatories or questions at depositions related to the first amended complaint; (3) that the complaint is factually deficient; and (4) that by naming the city of Madison as a party to the antitrust claim, the complaint improperly challenges the company's continued representation by its attorney, a member of the Madison City Council.

The appellants moved the trial court to dismiss the counterclaim, or, in the alternative, to hold the counterclaims in abeyance until after their claims had been litigated. The trial court denied the motion to dismiss the tortious interference with contractual relations, conspiracy to tortiously interfere with contractual relations, and the sec. 134.01, Stats., counterclaims. The trial court withheld a ruling on the abuse of process and conspiracy to abuse process counterclaims, reasoning that they were premature. The court also denied the motion to bifurcate the trial.

The appellants appeal from the denial of their motions. The counterclaimants cross-appeal from the ruling that the abuse of process counterclaims were premature.

## II. STANDARD OF REVIEW

Whether a complaint states a claim is a question of law which we review without deference to the trial court. *Williams v. Security Sav. & Loan Ass'n,* 120 Wis. 2d 480, 482, 355 N.W.2d 370, 372 (Ct. App. 1984).

## III. JOINDER OF OPPOSING COUNSEL AS PARTIES

The appellants contend that as a matter of law, defendants should be precluded from counterclaiming against plaintiffs' counsel for the prosecution of a lawsuit in the underlying lawsuit. We agree for the policy reasons outlined below.

Allowing counterclaims against opposing counsel could create a conflict of interest which would require a substitution of counsel. *Babb v. Superior Court of Sonoma County,* 479 P.2d 379, 382 (Cal. 1971); *Lyddon v. Shaw,* 372 N.E.2d 685, 688 (Ill. App. Ct. 1978). This has occurred in the case at bar as the drivers' attorneys recused themselves and sought their own counsel to defend the counterclaims. We are concerned that such counterclaims could become potent "dilatory and harassing devices" which could "deter poor plaintiffs from asserting bona fide claims" due to the additional risk and expense. *Babb,* 479 P.2d at 382–83.

We are also seriously concerned about the negative effect of these counterclaims on the attorney-client privilege and work product immunity, both critical to effective advocacy. The company and Melms, the respondents, argue that sec. 901.04(1), Stats., under which preliminary questions, including the existence of a privilege, are determined by the trial judge, sufficiently protects the attorney-client privilege. Work product is simi-

larly shielded by a motion for a protective order under sec. 804.01(3), Stats. While these safeguards exist, resorting to them could significantly delay the discovery process and the resolution of the principal action. *See Realco Services, Inc. v. Holt,* 479 F. Supp. 880, 886 (E.D. Pa. 1979). We view such delays as undesirable, especially when they could be avoided by simply requiring the claims against opposing counsel to be brought after termination of the principal lawsuit.

Other factors which influence our decision include the potential for jury confusion as a result of trying the principal action and counterclaims simultaneously, and the infringement of a party's right to choose counsel which is guaranteed by article I, section 21(2) of the Wisconsin Constitution.

Finally, we note that requiring defendants to bring claims against opposing counsel after termination of the underlying action neither prejudices defendants nor deprives them of their rights.[2] The respondents argue that article I, section 9 of the Wisconsin Constitution, which entitles a person to a prompt remedy in the law for injuries, requires that their claims be tried in the same suit. We disagree. The respondents are not completely without remedy for their injuries for the duration

---

[2]The respondents argue that it was necessary for them to bring the claims against the opposing counsel in this suit "to avoid a later bar by *res judicata.*" Under *res judicata,* a final adjudication on the merits in a prior action is conclusive in a subsequent action between the same parties, or their privies, as to all matters that were litigated or that might have been litigated. *Desotelle v. Continental Casualty Co.,* 136 Wis. 2d 13, 21, 400 N.W.2d 524, 526-27 (Ct. App. 1986). Because we hold that respondents cannot litigate their claims against opposing counsel in this action, *res judicata* will not bar their claims after termination of this action.

of the drivers' underlying action. Sections 802.05 and 814.025, Stats., allow recovery of costs and reasonable attorney fees for the types of conduct alleged by the respondents. Furthermore, the interests discussed above outweigh the respondents' interest in promptly obtaining the complete remedy which they seek.

While we conclude that defendants may not join opposing counsel in their counterclaims, we disagree with appellants that the counterclaims must be dismissed altogether. The counterclaims must be dismissed only as to Attorneys Cole and Bolton and the firm Haight & Hofeldt. We now address the appellants' other arguments for dismissal to the extent that they relate to the appellant drivers.

## IV. RIGHT TO PETITION

Appellants offer two arguments for dismissal of the counterclaims which relate to their first amendment right to petition the government. Relying on *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731 (1983), appellants first argue that the right to petition protects them from counterclaims based on the prosecution of their suit while the suit is pending. They state that the only way that respondents could bring these counterclaims in a manner consistent with their first amendment right would be to incorporate them in a summary judgment motion. The argument is without merit.

In *Bill Johnson's Restaurants,* a waitress, fired by the company, filed an unfair labor practice complaint with the NLRB. The company then filed a complaint against her in a state court. The waitress filed a second complaint with the NLRB alleging the civil suit had been filed in retaliation for her previous complaint. The

NLRB then ordered the company to withdraw its state-court complaint. *See* 461 U.S. at 733–37. The Court reversed the board's decision, stating that:

> When a suit presents genuine factual issues, the state plaintiff's First Amendment interest in petitioning the state court for redress of his grievance, his interest in having the factual dispute resolved by a jury, and the State's interest in protecting the health and welfare of its citizens, lead us to construe the [NLRA] as not permitting the Board to usurp the traditional factfinding function of the state-court jury or judge. Hence, we conclude that if a state plaintiff is able to present the Board with evidence that shows his lawsuit raises genuine issues of material fact, the Board should proceed no further with the [retaliation charges] but should stay those proceedings until the state-court suit has been concluded.

*Id.* at 745–46 (footnotes omitted).

*Bill Johnson's Restaurants* differs significantly from the case before us. It involves two forums and raises federalism issues not found in the case at bar. Furthermore, in reaching its decision, the Court had to balance the NLRB's interests in preemption against the state's interest in resolving disputes under its laws and the state-court plaintiff's right to a jury trial. None of these interests are at stake in the present case. Given these distinctions, we fail to see how *Bill Johnson's Restaurants* could require dismissal of the counterclaims absent a showing by respondents that they are entitled to summary judgment.

Appellants next argue that their alleged interference with contractual relations was lawful because they were exercising their right to petition by filing suit against the company. Consequently, the counterclaims involving

interference with contractual relations must be dismissed. We reject this argument.

In the area of antitrust law, the United States Supreme Court has held that the right to petition protects individuals from liability under the Sherman Act when they are merely soliciting governmental action with respect to the passage and enforcement of legislation. *Eastern R.R. Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 138 (1961). In *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510-11 (1972), the Court extended this protection to complaints filed with administrative agencies and courts. However, the Court held that where suits were filed as a "sham," with the intention of blocking competitors' free and unlimited access to agencies and courts, the right to petition would afford no protection. *See id.* at 511-15.

Courts have addressed the right to petition and the sham exception in other contexts, including tortious interference with business opportunity or business relationships. *See Havoco of America, Ltd. v. Hollobow,* 702 F.2d 643 (7th Cir. 1983); *Sierra Club v. Butz,* 349 F. Supp. 934 (N.D. Cal. 1972). In *Havoco,* the court held that the defendants' complaint filed with the SEC was protected by the first amendment from Havoco's tortious interference claim as long as it was not a ruse and the defendants were genuinely seeking favorable governmental action. 702 F.2d at 651.

In the case at bar, the respondents have alleged that one of the drivers had stated the lawsuit would give Melms "so much legal hassle and expense he would be forced to sell Badger Cab Company, Inc." In addition, the respondents assert that the first amended complaint and the discovery demands served with it were extensive and consistent with the driver's statements. Finally, the

respondents averred that neither amended complaint was well-grounded in fact.

We find that respondents have alleged sufficient facts which if proven would establish that the drivers were not genuinely seeking favorable governmental action. Therefore, we conclude that the alleged interference with contractual relations would not be protected by the right to petition and that the trial court properly denied the motion to dismiss these counterclaims.

## V. FAILURE TO ALLEGE SPECIAL DAMAGES

Citing *Johnson v. Calado,* 159 Wis. 2d 446, 452, 464 N.W.2d 647, 649 (1991), appellants contend that all counterclaims should be dismissed because respondents failed to allege any special damages as a consequence of the appellants' torts. *Calado* was an action for malicious prosecution. Appellants urge us to extend *Calado* to require a counterclaimant for abuse of process to allege special damages. We decline to do so because it would be totally inconsistent with the purpose for developing the tort of abuse of process—to provide a remedy in situations where malicious prosecution failed. *Brownsell v. Klawitter,* 102 Wis. 2d 108, 113, 306 N.W.2d 41, 44 (1981).

Appellants also argue that the *Calado* rule should extend to the claim for tortious interference with contractual relations. We disagree for two reasons. First, malicious prosecution and tortious interference with contractual relations have no elements in common. Second, the policy behind the special damages rule is not relevant in the tortious interference context. The rule is intended to prevent the substantial likelihood of a malicious prosecution action from inhibiting litigants in

asserting legitimate claims. *Calado,* 159 Wis. 2d at
461-62, 464 N.W.2d at 653-54. We are not convinced
that if we fail to require special damages in this case,
counterclaims for tortious interference with contractual
relations could become so common that prospective liti-
gants would be discouraged from pressing their claims.

■

Therefore, we conclude that none of the counter-
claims should be dismissed for failure to allege special
damages.

## VI. CONSPIRACY

■

Appellants argue that the sec. 134.01, Stats., and
conspiracy counterclaims must be dismissed because a
party and his or her attorney, as principal and agent, are
legally incapable of conspiracy. However, appellants do
not argue that the drivers may not conspire with one
another. We conclude that these counterclaims should
not be dismissed as to the drivers.

■

We agree that an agency relationship exists between
attorney and client. However, courts have held lawyers
liable for conspiracy with their clients. *See Blatt v.
Green, Rose, Kahn & Piotrkowski,* 456 So.2d 949 (Fla.
Dist. Ct. App. 1984) (conspiracy to breach fiduciary duty
to estate beneficiaries); *Celano v. Frederick,* 203 N.E.2d
774 (Ill. App. Ct. 1964) (conspiracy to defraud creditor).
We agree with the *Celano* court that an attorney may
not use the license to practice law as a shield to protect
himself/herself from the consequences of participating
in an unlawful or illegal conspiracy. *Id.* at 778. There-
fore, we conclude that the respondents may assert con-
spiracy claims against opposing counsel after the princi-
pal action is terminated.

## VII.   ABUSE OF PROCESS

In their cross-appeal, the company and Melms maintain the trial court erred in holding that the abuse of process and associated conspiracy counterclaims were premature. We disagree.

They correctly state that the two required elements of abuse of process are: (1) a wilful act in the use of process not proper in the regular conduct of the proceedings and (2) an ulterior motive. *Brownsell,* 102 Wis. 2d at 115, 306 N.W.2d at 45. Their confusion stems from the following passage from *Brownsell:*

> In addition to the two essential elements, an action for abuse of process may be further provided on malice, absence of probable cause, or both. Proof of malice . . . does not require favorable termination of the proceedings. But where it is alleged that the abused process was issued without probable cause, termination of the proceedings is necessary to establish the absence of probable cause.

*Id.* at 116, 306 N.W.2d at 45.

The counterclaim alleges that the first amended complaint was neither well-grounded in fact nor warranted by existing law or a good faith argument for its modification. The counterclaim contains similar allegations concerning the second amended complaint. The cross-appellants concede that these assertions are equivalent to alleging that the process was issued without probable cause. However, they argue that as long as they have sufficiently pled the two essential elements of abuse of process, they should be allowed to proceed on the counterclaim despite alleging a lack of probable cause. We cannot accept that premise as it would negate the supreme court's holding in *Brownsell.*

Therefore, we conclude that the trial court correctly withheld a ruling on the motion to dismiss these counterclaims until the principal lawsuit was terminated.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.