KASSOWITZ, Appellant, vs. SENTINEL COMPANY, Respondent.

*December 7, 1937—January 11, 1938.*

The cause was submitted for the appellant on the brief of *Gold & McCann* of Milwaukee, and for the respondent on that of *Lines, Spooner & Quarles,* attorneys, and *Charles B. Quarles* of counsel, all of Milwaukee.

MARTIN, J.   The following paragraph contains the alleged libel:

"That theory is in practice at Muirdale, Coffey said, and there are a number of persons employed there, including part-time doctors, who are so-called arrested cases of tuberculosis. . . ."

The appellant's first contention is that the article, above quoted, sufficiently identifies the plaintiff to permit him to maintain the action.   It is alleged in the complaint that at the time of the publication, there were, including plaintiff, four part-time doctors employed at the Muirdale sanitarium. The article states: "There are a number of persons employed there, including part-time doctors, who are so-called arrested cases of tuberculosis."   The trial court did not reach the question whether or not the language of the alleged libelous statement is so inclusive as to identify all the part-time doctors, thus permitting any one of them to bring suit. This court in recent years has on several occasions passed upon the sufficiency of identification in libel actions.   In *Helmicks v. Stevlingson,* 212 Wis. 614, 615, 250 N. W. 402, the court said:

" 'It is well settled that defamatory words must refer to some ascertained or ascertainable person and that person

must be the particular plaintiff. Statements are not libelous unless they refer to some ascertained or ascertainable person.' *Schoenfeld v. Journal Co.* 204 Wis. 132, 136, 235 N. W. 442; *Williams v. Journal Co.* 211 Wis. 362, 247 N. W. 435, 439."

"In every action for defamation, two things are necessary:

"(1) A defamation apparent from the words themselves, for no innuendo can alter the sense.

"(2) Certainty as to the person who is defamed, for no innuendo can render certain that which is uncertain." Newell, Slander and Libel (4th ed.), § 200. (On Sufficiency of Identification, see Annotation, 91 A. L. R. p. 1161.)

In *Williams v. Journal Co.* 211 Wis. 362, 367, 247 N. W. 435, the defendant newspaper published the following:

" 'Our attention has been called to instances where a member of the city attorney's staff has, while so employed, accepted retainers from a local carrier. . . . We believe this to be bad in principle—opens a wide field of temptation—raises grave question of positive damage in case of future conflict of interest.' "

In this case, Mr. Williams was at the time an assistant city attorney. The court said:

"In the article complained of in the fifth cause of action the plaintiff is not mentioned by name. Neither from that article nor the extraneous facts, which are alleged in the complaint by way of inducement, can it be ascertained that the plaintiff was the particular person to whom the statements in that article related. The nearest approach in that article to an identification of any person is the statement that 'a member of the city attorney's staff has accepted such retainers from a local carrier.' That, however, does not identify the plaintiff as the particular member of that staff to whom that statement is intended to refer. Although it is alleged in the complaint by way of inducement that the plaintiff is the only attorney rendering professional services to the city who was known as the special assistant city attorney, and that he accepted employment from the Chicago,

Milwaukee & St. Paul Railroad Company to condemn a freight depot site, it is not alleged and it does not otherwise appear that there were not also other members of the city attorney's staff who also accepted retainers from a local carrier, and to whom consequently that article was equally applicable and was intended to refer. Because the statements complained of in the article upon which the fifth cause of action is based do not refer to some ascertained and ascertainable person, they are not libelous."

The city attorney's staff at the time consisted of not more than four or five assistant city attorneys. In the instant case, there were only four part-time doctors employed at the Muirdale sanitarium. The lack of sufficient identification, as held in the *Williams Case,* is applicable to the facts in the case at bar. The alleged libelous article does not state that all of the part-time doctors are arrested cases of tuberculosis. The ones referred to may have been any of the four and not necessarily this plaintiff. This branch of the case is ruled by *Schoenfeld v. Journal Co.* 204 Wis. 132, 235 N. W. 442, 444; *Williams v. Journal Co., supra; Helmicks v. Stevlingson, supra.*

Though the conclusion reached results in an affirmance of the order sustaining the demurrer, we will consider whether the article is libelous *per se.* Appellant cites *Kirby v. Smith,* 54 S. D. 608, 609, 224 N. W. 230, 231, an action for slander under the Revised Code, section 98, subdivisions 2, 3. The complaint, in substance, alleged:

"That plaintiff was eighteen years of age, by trade or profession a clerk, and until the time complained of was engaged in clerical work in business houses in Rapid City, where she was a resident and had an extensive acquaintance. That in the month of February, 1927, the defendant, in conversation with numerous persons in Rapid City, did speak of and concerning the plaintiff the following words: 'That the plaintiff was then afflicted with tuberculosis (and did thereby impute to her the existence of an infectious and contagious

disease), and that plaintiff was physically unfit to be employed in any capacity in said city wherein she must meet or deal with the public, and that her condition of health was such that any person dealing with her or transacting any business or coming in contact with her was likely to become afflicted with said infectious and contagious disease.' "

The South Dakota Code, section 98, so far as applicable to the case, defines "slander" as follows:

"Slander is a false and unprivileged publication, other than libel, which: . . .

"2. Imputes to him the present existence of an infectious, contagious, or loathsome disease; ·

"3. Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit."

The trial court sustained an objection to the introduction of any evidence, directed a verdict for defendant, and entered judgment dismissing the action. The plaintiff appealed. In reversing the judgment, the supreme court said (p. 611):

"The complaint in the present case alleges that the defendant published of and concerning the plaintiff that she was afflicted with tuberculosis to an extent that any person dealing with her or transacting any business or coming in contact with her was likely to become afflicted and infected with tuberculosis. It seems to us that this would have a tendency to make some people avoid her.

"It is further alleged that defendant said her condition was such that she was physically unfit to be employed in any capacity where she must meet or deal with the public. We think that this would tend to injure her in respect to her profession or business. It imputes to her a general disqualification in respect to the occupation of a clerk, and the language alleged to have been spoken by the defendant of and concern-

ing the plaintiff would certainly have a tendency to prevent her from procuring employment."

In 36 C. J. p. 1167, § 33, it is said:

"To charge one falsely in writing with having any repulsive disease or condition which would necessarily cause him to be shunned or avoided is libelous *per se.*"

We have carefully examined the other cases cited by appellant, and do not find any in point. We do not regard the decision in *Kirby v. Smith, supra,* as applicable to the facts at bar. The alleged slanderous statements in that case came clearly within the inhibition of the state code defining slander. In 17 R. C. L. p. 294, § 33, it is said:

"It is a rule of the common law that an action will lie, without proof of special damage, for speaking words of another which impute that he has a loathsome or contagious disease, at the time of publication, it being obvious that such charges would, if believed, wholly or partially exclude such person from good society. To come within the rule, however, the disease charged must be either leprosy, plague, or a venereal disease. . . ."

We have been unable to find any case directly in point. It may be unfortunate, but it is no disgrace to be tubercular. Contracting the disease is not due, as in some cases of disease, to any immorality.

The alleged libelous statement in the instant case refers to so-called "arrested cases of tuberculosis." The words, "arrested case," may be defined in a medical way, or may be interpreted in the much looser terms of the layman, to whom it may mean an individual well enough to leave a sanitarium and resume his usual existence. It may mean that the person afflicted has so far recovered that he would not communicate the disease to others. We take the following medical definition from the Official Diagnostic Standards (10th ed.,

1935), of the National Tuberculosis Association. Therein the definition of an arrested case is as follows:

"All constitutional symptoms absent; sputum, if any, microscopically negative for tubercle bacilli; X-ray findings compatible with a stationary or retrogressive lesion. These conditions shall have existed for a period of six months, during the last two of which the patient has been taking one hour's walking exercise twice daily or its equivalent."

Webster's New International Dictionary gives the following medical definition of the word "arrest:"

"To bring to a standstill or state of inactivity; as, arrested tuberculosis."

We have no hesitancy in holding that the alleged libelous words are not actionable *per se*. The plaintiff resorts to an innuendo to allege that an "arrested case of tuberculosis" is loathsome and a contagious disease, and that the phrase "an arrested case of tuberculosis" is understood by the general public and by the readers of the defendant's papers to mean an individual who is still tubercular and subject to the same hazards of relapse and spread of disease as is common in cases of clinical and manifest tuberculosis.

"Words which are defamatory *per se* do not need an innuendo, and, conversely, words which do need an innuendo are not defamatory *per se*." 36 C. J. p. 1151, § 17; *Shaw C. & D. v. Des Moines Dress Club,* 215 Iowa, 1130, 245 N. W. 231, 86 A. L. R. 839 (see Annotation commencing at page 848); Newell, Slander and Libel (4th ed.), § 200; *Helmicks v. Stevlingson, supra; Schoenfeld v. Journal Co., supra.*

"The general effect of the innuendo is only to explain matter which has been already sufficiently expressed before; the import of the words used it cannot enlarge, extend, or change. It has also been held that in determining whether a publication is libelous *per se,* the court is confined to the language employed in the publication and cannot look to the innuendo alleged in the petition. . . . The innuendo cannot

aver a fact, or do anything more than refer back to some facts stated in the inducement, and if the inducement is wanting the deficiency cannot be supplied by the statement of the facts in the innuendo." 17 R. C. L. p. 396, § 151.

It is well settled that, in matters not libelous *per se,* special damages must be pleaded. No special damages are alleged. The published matter not being libelous *per se,* no cause of action is stated. *Judevine v. Benzies-Montanye Fuel & Whse. Co.* 222 Wis. 512, 517, 269 N. W. 295.

*By the Court.*—Order affirmed.