Elizabeth WILDES, Plaintiff-Appellant,

v.

PRIME MANUFACTURING CORPORATION and
Carol J. Grundy, Defendants-Respondents.

Court of Appeals

*No. 90-0458. Submitted on briefs December 4, 1990.—Decided
January 29, 1991.*

(Also reported in 465 N.W.2d 835.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William J. Campbell* of *Campbell Law Offices* of Menomonee Falls.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Jeffrey A. Kremers* and *Diane Slomowitz* of *Fox, Carpenter, O'Neill & Shannon, S.C.* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   Elizabeth Wildes appeals from the judgment, entered after a trial to the court, dismissing her complaint against Prime Manufacturing Corporation

and Carol J. Grundy. Prime manufactures equipment for the railroad and mining industries. Wildes, a former Prime employee, claimed that Grundy, also a Prime employee, defamed her. At the time of the alleged defamation, Wildes was Prime's Director of Purchasing, and Grundy was her supervisor.

This appeal concerns two statements that Wildes claims were made by Grundy. The first was at a Monday morning meeting between Wildes, Grundy and two engineers employed by Prime, Jerry Mueckl and William Wagner. Wildes was explaining the difficulty she was having getting needed parts when Grundy, obviously not satisfied with the explanation, responded, according to a written finding made by the trial court, " 'Damn you, that's bull shit [sic], its [sic] not acceptable.' " Although Grundy testified that she could not remember making the statement, she recalled that she was dissatisfied with the way Wildes had handled the problem.

Wildes claims that the second instance of alleged defamation occurred when Grundy was interviewing a candidate for a position in the purchasing department. The person hired for that position would work with and report to Wildes. Accordingly, Wildes had also interviewed two of the candidates. Phillip Hoyer, the candidate to whom Grundy allegedly made the comments and who was not an employee of Prime, testified that during the course of his interview with Grundy, Grundy discussed the person for whom the successful candidate would work without identifying that person by name. According to Hoyer's testimony, Grundy told him that she was "intending to replace the purchasing person" because the purchasing person "was a 9 to 5 individual, did not work for the best interests of the company, [and] did not negotiate the best prices for whatever products she had to buy." Hoyer, who had met Wildes while they

were both attending classes at the Milwaukee Area Technical College and with whom he spoke on the telephone approximately once a month, testified that he deduced that Grundy was referring to Wildes, and that the comments had this effect on him:

> I didn't think too much of her [Wildes] then. I thought it would be somebody I didn't want to associate too much with . . .. I felt that the comments that were made, if they were true, that Miss Wildes was not a good worker.

Hoyer testified that after his interview with Grundy, he continued his monthly talks with Wildes, and, indeed, related Grundy's comments to her. Although he initially testified that he told Wildes "the next day" about what Grundy had said, he quickly admitted that it was when he met Wildes at the Wisconsin State Fair approximately a month later. Hoyer explained his change in testimony: "My time was mixed. It wasn't true. I didn't out and out lie."

The trial court held that Grundy and Prime were protected by the doctrine of conditional privilege with respect to both incidents. First, in connection with Grundy's statement "Damn you, that's bullshit, it's not acceptable," the trial court asserted that Grundy's statement was justified because Grundy had called the supplier and learned, erroneously as it later turned out, that the parts were available after all. Thus, the trial court concluded that the statement "appeared to have a factual basis sufficient to call into question the veracity of [Wildes]." Second, in connection with the disparaging remarks allegedly made to Hoyer, the trial court found that Hoyer's credibility was "crippled," but further explained its rationale as follows:

447

Carol Grundy never mentioned the name of Elizabeth Wildes to Mr. Hoyer; and she had no way of knowing that he was acquainted with her. Thus, the fact that since he did know her and was able to piece together Carol's statements as referring to [Wildes] by reasoning of this acquaintance, does not destroy the conditional privilege available to defendant, Carol Grundy. There is no way that she can be fairly charged with defaming [Wildes] under these circumstances.

■
Wildes seeks reversal on two grounds. First, she correctly points out that the trial court had its time sequence wrong with respect to the first statement: Grundy called the supplier after, not before, the "Damn you, that's bullshit, it's not acceptable" statement. Thus, she argues, Grundy did not have, in the trial court's words, "a factual basis sufficient to call into question" Wildes' veracity. Second, Wildes correctly points out that a victim of defamation need not be identified by name. Rather, it is sufficient if the defamatory statement refers to a person whose identity is ascertainable. *See De Witte v. Kearney & Trecker Corp.,* 265 Wis. 132, 137–138, 60 N.W.2d 748, 751 (1953); *Restatement (Second) of Torts* sec. 564 (1976) ("A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer."). Nevertheless, we affirm the trial court because the statements were conditionally privileged, and the record is totally devoid of evidence that could support a finding that the privilege was abused. *See State v. Alles,* 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982) (appellate court should affirm a correct judgment irrespective of trial court's rationale). In concluding that the statements were conditionally

privileged, we assume—but do not decide—that the statements were made and that they were defamatory.[1]

A defamatory statement is conditionally privileged if it is "made on a subject matter in which the person

[1]Grundy testified she did not recall saying "Damn you, that's bullshit." Both Wildes and Mueckl, one of the engineers present at the meeting, testified, however, that Grundy did make the statement. Therefore, the trial court's finding that Grundy made the statement is not "clearly erroneous" and is, accordingly, binding on us. *See* Rule 805.17(2), Stats. Whether a statement is capable of a defamatory meaning, however, is a question of law that we decide *de novo. Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.,* 146 Wis. 2d 568, 579, 431 N.W.2d 721, 726 (Ct. App. 1988). Grundy's statement could, but need not be, construed as Grundy's assertion that Wildes was lying, *cf. Milkovich v. Lorain Journal Co.,* 497 U.S. —, —, 110 S. Ct. 2695, 2705–2706, 111 L. Ed. 2d 1, 17–18 (1990) (speaker's opinion that a person has not told the truth may be actionable defamation), and thus was capable of a defamatory meaning, *cf. Schaefer v. State Bar,* 77 Wis. 2d 120, 123–125, 252 N.W.2d 343, 345–346 (1977) (statement that widow was much younger than her late husband could, under the circumstances, be considered a defamatory accusation that she had "married only for pecuniary gain"; statement that widow was "utilizing her seventh set of attorneys" in connection with a dispute over an estate was also capable of defamatory meaning). Grundy's statement could also be taken as a non-defamatory earthy epithet of disapproval. Although the trial court did not make any specific findings of fact in this regard, it apparently determined that the statement was defamatory since it reached the conditional-privilege issue.

Grundy also denied criticizing Wildes at the Hoyer interview. Although the trial court found Hoyer to be less than credible, it apparently accepted his testimony that Grundy made the disparaging statements about Wildes and concluded that they were defamatory because it reached the conditional-privilege issue.

449

making the statement and the person to whom it is made have a legitimate common interest." *Zinda v. Louisiana Pac. Corp.,* 149 Wis. 2d 913, 922, 440 N.W.2d 548, 552 (1989). Whether a statement is protected by a conditional privilege is a question of law, *Restatement (Second) of Torts* sec. 619(1), which, accordingly, we determine *de novo, see First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

Both of Grundy's statements were protected by a conditional privilege. The first statement was made in the course of a meeting with co-employees about a subject of common concern to each. This is a classic situation where the doctrine of conditional privilege applies. *See Zinda,* 149 Wis. 2d at 923–924, 440 N.W.2d at 552–553; *Restatement (Second) of Torts* sec. 596 comment d. The second statement, that the purchasing person "was a 9 to 5 individual, did not work for the best interests of the company, [and] did not negotiate the best prices for whatever products she had to buy," was made during the course of a job interview and was about a matter in which both Grundy, the potential employer, and Hoyer, the potential employee, had "a legitimate common interest," *see Zinda,* 149 Wis. 2d at 922, 440 N.W.2d at 552, namely the qualities Grundy was seeking in purchasing-department employees. Thus, Grundy testified that she explained to Hoyer that the person she wanted had to be "a good negotiator . . . who was willing to put in extra hours." Grundy also testified that she "didn't want to hire someone with the wrong assumptions they were going to be a 9 to 5-er." Using another employee as an example of what would not be tolerated was thus within the ambit of Grundy's and Hoyer's com-

mon concern, and the statements to Hoyer were therefore also protected by a conditional privilege.

A person who makes a defamatory statement that is conditionally privileged is not liable unless the privilege has been abused. *Zinda,* 149 Wis. 2d at 924–925, 440 N.W.2d at 553; *Restatement (Second) of Torts* sec. 593. Wisconsin has adopted the American Law Institute analysis as to whether a conditional privilege has been abused.

> The Restatement 2d of Torts lists five conditions which may constitute an abuse of the privilege, and the occurrence of any one causes the loss of the privilege. The privilege may be abused: (1) because of the defendant's knowledge or reckless disregard as to the falsity of the defamatory matter (*see* secs. 600–602); (2) because the defamatory matter is published for some purpose other than that for which the particular privilege is given (*see* sec. 603); (3) because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege (*see* sec. 604); (4) because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged (*see* sec. 605); or (5) the publication includes unprivileged matter as well as privileged matter (*see* sec. 605A).

*Zinda,* 149 Wis. 2d at 924–925, 440 N.W.2d at 553. If a defamatory statement is protected by a conditional privilege, the plaintiff cannot prevail unless he or she proves that the privilege was abused. *Id.,* 149 Wis. 2d at 926, 440 N.W.2d at 554. Whether the privilege has been abused is an issue of fact. *Id.,* 149 Wis. 2d at 926, 440

451

N.W.2d at 553; *Restatement (Second) of Torts* sec. 619(2).

Although we may not make "factual determinations, based on conflicting evidence, in lieu of, and in addition to, the findings made by the trial court," *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107, 293 N.W.2d 155, 159 (1980), "whether a party has met its burden of establishing a prima facie case is a question of law," *Burg v. Miniature Precision Components, Inc.,* 111 Wis. 2d 1, 12, 330 N.W.2d 192, 198 (1983). Accordingly, even though the trial court based its decision on two misconceptions—that is, (1) when Grundy was told by Prime's supplier that the parts were available, and (2) that Grundy had to specifically name Wildes before Grundy could be held liable with respect to the disparaging remarks made during the job interview, we must affirm because Wildes has failed to make a prima facie showing that Grundy abused the conditional privilege.

As we have seen, the first statement was made in response to Wildes' failure to get parts when they were needed. Wildes recalled the situation in her testimony:

> We had a new product out, and I had ordered some parts for it, which my understanding was that they would not be needed till later on in the summer. This was in June; but our salesmen sold a lot of the product, and we needed these parts sooner; and the previous Friday I had determined to take a half day of vacation. I was made aware that these parts were needed; and I called the distributor and the representative out east trying to see if I could get these parts sooner than the later summer delivery. They told me "no, the parts were manufactured overseas in Belgium or Holland, and that a portion of Europe was closed down because of a religious holiday." I so informed production. I so informed engineering, and I took my half day vacation.

Wildes testified that, in light of the unsolved parts shortage, Grundy was "irate" that she had taken the half day of vacation.

Although Grundy testified that she did not remember saying "Damn you, that's bullshit," when confronted with Wildes' explanation as to why the needed parts were not available, she admitted to being angry. She offered the following explanation at trial:

> Well, if you knew that a part was that critical and you went out in April to order it, you should have negotiated up front with that supplier, either to shorten the leadtime . . . even if you had to pay a premium price or find out—find out what his terms were to get this in earlier . . .. You don't wait until a week or 2 before or a week before and call the vendor and say: where are these parts, are they coming[?] And find out you don't have them coming.

Under *Zinda,* Wildes had to introduce evidence of any of the following in order to make a prima facie case that Grundy abused her conditional privilege: first, that Grundy either knew that Wildes had done everything she could to solve the parts problem, or recklessly disregarded information that would have given her such knowledge; second, that the statement was made for some ulterior purpose, unrelated to their common concern for Prime's business; third, that the statements were made to persons Grundy did not reasonably believe shared their common concern for Prime's business; fourth, that the statement included defamatory matter that was unrelated to Prime's business; or, fifth, that there was an unprivileged communication in addition to the one protected by the conditional privilege. *See Zinda,* 149 Wis. 2d at 925, 440 N.W.2d at 553. There is no such evidence in the appellate record. Accordingly,

the trial court's dismissal of Wildes' claim based on Grundy's statement "Damn you, that's bullshit, it's not acceptable," is affirmed.

The statement to Hoyer must be similarly analyzed. Here, too, Wildes has failed to adduce any evidence in satisfaction of her burden to establish a prima facie case that Grundy's conditional privilege was abused. First, there is no evidence that Grundy actually believed that Wildes was a good negotiator or that she was not a "nine to fiver," or that she recklessly disregarded information that would have given her that belief. Indeed, there is ample evidence to the contrary. Second, there is no evidence that Grundy made the statement for a purpose unrelated to her interview of Hoyer. Third, there is no evidence that the statement was made to anyone other than Hoyer. Fourth, there is no evidence that the statement included a matter that was not related to the subject of the job interview. Fifth, there is no evidence that there were any defamatory statements to Hoyer that were not protected by the conditional privilege. Accordingly, the trial court's dismissal of Wildes' claim based on Grundy's statement to Hoyer must be affirmed.

*By the Court.*—Judgment affirmed.