Amy BAUER, Plaintiff-Appellant,†

v.

Mary MURPHY, Defendant-Respondent.

Court of Appeals

*No. 93–2106. Submitted on briefs November 8, 1994.—Decided February 2, 1995.*

(Also reported in 530 N.W.2d 1.)

†Petition to review denied.

518

For the plaintiff-appellant the cause was submitted on the briefs of *Michael R. Fox* of *Fox & Fox, S.C.* of Madison and *Jeff Scott Olson* of Madison.

For the defendant-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Mary Batt* and *Michael J. Losse,* assistant attorneys general.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J.   Amy Bauer, a former member of the University of Wisconsin-Madison women's basketball

team, sued the team's coach, Mary Murphy, for, among other things, defamation and interference with a contract. The trial court granted Murphy's motions for summary judgment dismissing both claims and Bauer appeals.

The issues are: (1) whether the remarks on which Bauer bases her defamation action were slanderous *per se*; and (2) whether *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978), requires dismissal of Bauer's action for tortious interference with a contract because her only claim was for "emotional distress" unaccompanied by any pecuniary loss. We conclude that Murphy's remarks were not slanderous *per se*, and that the trial court properly dismissed Bauer's contract interference claim. We therefore affirm the judgment.

Bauer was recruited to play basketball at the university by Assistant Coach Michael Peckham, and she became a standout player. In her first two years on the team, she relied on Peckham for advice on both personal and team matters. During the basketball season of her junior year, Bauer was informed by Murphy and U.W. Women's Athletic Director Cheryl Marra that Peckham had been suspended pending an investigation into an allegation that he had maintained an inappropriate relationship with a player, whom Murphy identified as Bauer. Bauer denied any such relationship and was informed that a team meeting would be held that evening at which Peckham's suspension would be announced. Bauer was also told that she need not attend the meeting and would be permitted to show up late for practice.

Bauer was not present when the meeting began and Marra announced Peckham's suspension for having an inappropriate relationship with Bauer.

Members of the team proceeded to discuss various aspects of Bauer's personal relationships, and when Bauer entered the room essentially at the urging of an assistant coach, Murphy said, "Let's talk about it now." When team members began questioning Bauer about various times she had been seen in Peckham's company, she repeatedly denied that her relationship with him was in any way improper. The discussion became heated and at some point Murphy was alleged to have said to Bauer that she was a "disgrace" to the team and to the university.[1] Bauer's defamation claim centers on that remark.

After the meeting, Bauer resigned from the team. Sometime thereafter, she and a former teammate, Peggy Shreve, agreed to share an apartment during the following academic year. Murphy, who thought such an arrangement would have a detrimental effect on Shreve and the team, told Shreve that she would have to choose between living with Bauer and remaining on the team. Shreve told Bauer she could not share the apartment and Bauer found a new roommate.

Bauer sued Murphy for defamation, "invasion of privacy" and tortious interference with her apartment-sharing agreement with Shreve. She eventually added a claim for intentional infliction of emotional distress.

[1] Although Murphy stated in her affidavit that she did not recall calling Bauer a "disgrace," she has assumed for purposes of the appeal that she made such a remark.

Murphy points out that there is considerable evidence in the affidavits filed by various coaches and players that prior to the alleged "disgrace" remark, Bauer had become angry and sarcastic, and Murphy had criticized Bauer for challenging the team rules and Murphy's abilities as a coach. It was after these exchanges that Murphy allegedly told Bauer she was a disgrace to the team and the university.

The trial court granted summary judgment dismissing the defamation and contract interference claims, and the case went to trial on the other issues. The jury found against Bauer on both counts and judgment was entered dismissing her action in its entirety. She appeals only the court's dismissal of the defamation and contract interference claims on Murphy's summary judgment motions.

## I. Defamation

A communication is defamatory " 'if it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her].' " *Tatur v. Solsrud*, 174 Wis. 2d 735, 741, 498 N.W.2d 232, 233-34 (1993) (quoting RESTATEMENT (SECOND) OF TORTS § 559 (1977)). The first inquiry in evaluating a defamation claim is whether the communication is capable of a defamatory meaning, that is, whether the words complained of are "reasonably capable of conveying a defamatory meaning to the ordinary mind and whether the meaning ascribed by [the] plaintiff[ ] is a natural and proper one." *Meier v. Meurer*, 8 Wis. 2d 24, 29, 98 N.W.2d 411, 414 (1959). The determination is one of law for the trial court, *Tatur*, 174 Wis. 2d at 740, 498 N.W.2d at 233, and our review is de novo. *See First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).[2]

---

[2] If the trial court rules that the communication is capable of a defamatory meaning, the case goes to the jury "to determine whether [the] communication . . . was so understood by its recipient." *Hoan v. Journal Co.*, 238 Wis. 311, 329, 298 N.W. 228, 236, *cert. denied*, 314 U.S. 683 (1941).

In this case, the trial court ruled that the challenged words—that Bauer was a "disgrace" to the team and the university—were not capable of conveying a defamatory meaning and granted judgment dismissing the claim.

Bauer argues first that in *Wildes v. Prime Mfg. Corp.*, 160 Wis. 2d 443, 465 N.W.2d 835 (Ct. App. 1991), we held that a statement far less egregious than Murphy's was defamatory, and that *Wildes* requires reversal. We disagree. Wildes sued her employer, claiming that she was defamed when her supervisor, responding to Wildes's explanation of various difficulties she was having on the job, said: "Damn you, that's bull shit [sic], its [sic] not acceptable." *Id.* at 446, 465 N.W.2d at 837 (alterations in original). We did not hold that the statements were defamatory. Indeed, because we decided the case on other grounds, we stated in the opinion that we were simply assuming—*without deciding*—that the statements were made and were defamatory. *Id.* at 449, 465 N.W.2d at 838. We do not see *Wildes* as compelling the result Bauer urges upon us. Nor, however, do we agree with the trial court's reasons for dismissing the claim. We affirm on other grounds.

This case involves slander—"the publication of defamatory matter by spoken words"—not libel, which is defamation "by written or printed words." RESTATEMENT (SECOND) OF TORTS § 568 (1977). Originally, slander was not actionable in the absence of actual pecuniary or "special" damages. *Martin v. Outboard Marine Corp.*, 15 Wis. 2d 452, 459, 113 N.W.2d 135, 138-39 (1962). Over the years, however, four categories of slander became actionable without alleging or proving special damages: those imputing a criminal offense,

a "loathsome" disease, some conduct or characteristic affecting the plaintiff in his or her business or profession, or "unchastity" or serious sexual misconduct if the plaintiff is a woman. *Id.* at 459, 113 N.W.2d at 139; RESTATEMENT (SECOND) OF TORTS § 570 (1977). Such statements were, in effect, considered slanderous as a matter of law. *Martin*, 15 Wis. 2d at 459, 113 N.W.2d at 139.

Summarizing the current posture of the law, the Wisconsin Supreme Court noted in *Martin* that "[a]ll other slander not falling into these seemingly artificial categories, no matter how obvious or apparent, is not actionable without *alleging and proving* special damages."[3] *Martin,* 15 Wis. 2d at 459, 113 N.W.2d at 139 (emphasis added). The reason for the slander *per se* rule is that "certain words are by their nature especially likely to cause pecuniary loss and . . . proof of the defamation itself is sufficient to establish the existence of some damages so that the jury may, without other

---

[3] In so declaring, the court noted the distinction between slander and libel. If a written publication is capable of a defamatory (libelous) meaning, "it is actionable without an allegation of special damages . . . ." *Martin v. Outboard Marine Corp.*, 15 Wis. 2d 452, 461, 113 N.W.2d 135, 140 (1962). With respect to actions for slander, however, the court stated: "[I]f [the action is] in the form of slander not constituting one of the four arbitrary categories, it is not actionable *without an allegation of special damage.*" *Id.* (emphasis added).

Even after adoption of the "new" rules of civil procedure—with their "notice pleading" provisions—in 1976, the court continued to examine pleadings in slander cases to ascertain whether special damages were alleged and, if not, whether the purported slander fit into one of the four classes of *per se* slander so as to allow the action to continue. *See Starobin v. Northridge Lakes Dev. Co.*, 94 Wis. 2d 1, 12-16, 287 N.W.2d 747, 752-54 (1980).

evidence, estimate the amount of damages." *Starobin v. Northridge Lakes Dev. Co.*, 94 Wis. 2d 1, 13, 287 N.W.2d 747, 752 (1980) (citing WILLIAM L. PROSSER, THE LAW OF TORTS § 112, at 754-56 (4th ed. 1971)).

In her Second Amended Complaint, Bauer based her defamation claim on Murphy's "disgrace" remark at the team meeting,[4] alleging that it harmed her in the following manner: "causing the plaintiff to suffer a loss of athletic opportunities, emotional distress, loss of reputation and pain and suffering." Murphy argues that Bauer's complaint is subject to dismissal for failure to allege special damages under the rules just discussed.

■ Responding, Bauer first states that Murphy did not argue to the trial court that Bauer failed to allege special damages. Bauer does not argue that the argument was thus waived, however, but proceeds to respond to it in detail. We retain the discretion to consider arguments raised for the first time on appeal, even if waived, for the "waiver" rule is "one of judicial administration and policy, and not one of power." *Arsand v. City of Franklin*, 83 Wis. 2d 40, 55-56, 264 N.W.2d 579, 586-87 (1978). Here, the parties have adequately briefed the issue, and, as we have often recognized, "[a]n appellate court may *sustain* a lower court's holding on a theory or on reasoning not presented to the lower court." *State v. Holt*, 128 Wis. 2d 110, 125, 382 N.W.2d 679, 687 (Ct. App. 1985) (emphasis added).

---

[4] The complaint also alleged that Murphy asserted in the presence of others "that [Bauer] had an improper relationship of a sexual nature with . . . Peckham." As indicated above, however, the arguments on this appeal center only on Murphy's alleged "disgrace" remark at the team meeting.

Bauer next argues that "the record shows special damages." As we have noted, after the trial court granted summary judgment dismissing the defamation and contract interference causes of action, the case went to trial on Bauer's claims for invasion of her right to privacy and for intentional infliction of emotional distress, and the jury found against her on both claims. She contends on appeal that she presented evidence at trial that she "suffered severe clinical depression caused by Murphy's statements, [and] incurred treatment expenses in excess of $1,000."

However, at the time the trial court granted Murphy's motion for summary judgment dismissing Bauer's defamation claim, all it had before it were the pleadings and the affidavits in support of, and those in opposition to, the summary judgment motion—none of which alleged or stated any special damages. Bauer's claim for emotional distress had not yet been made. Additionally, as we have consistently held, the first inquiry in any summary judgment motion filed by a defendant is whether the complaint states a claim upon which relief can be granted. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473, 477 (1980).[5] If it does not, the analysis goes no further and the motion is granted.[6]

[5] Indeed, Murphy's summary judgment motion specifically alleged, among other things, that Bauer's complaint failed to state a cause of action for defamation.

[6] Even in cases where the complaint may be said to state a claim, the party opposing summary judgment cannot rest on the allegations in the complaint but must set forth, by affidavit or other statutory means, specific facts showing that a genuine issue of fact exists. Section 802.08(3), STATS.

Murphy's summary judgment motion was directed to Bauer's Second Amended Complaint, which stated the following causes of action: invasion of privacy, defamation, and tortious interference with a contract.[7] The *ad damnum* clauses for each were identical, claiming that Murphy's actions and statements caused Bauer to lose "athletic opportunities" and to suffer "emotional distress, loss of reputation and pain and suffering." The claim for intentional infliction of emotional distress upon which the "medical treatment" evidence was later introduced was not raised until after the hearing at which the court dismissed the defamation claim.[8] Thus, there were no allegations in Bauer's complaint—and no evidentiary facts stated in her affidavits in opposition to Murphy's summary judgment motion—asserting special damages. We do not see how evidence in support of such a claim taken at trial more than a month later can save the complaint.

Bauer next argues that Murphy's remark is slanderous *per se* because, when taken in the context of the discussion at the meeting, it "declare[d] that [Bauer] was guilty of disgraceful [sexual] acts with Coach Peckham," thus, we presume, impugning her "chastity" under the rules discussed above. And while the "chastity" rule is apparently good law, Bauer has not

[7] The complaint also stated causes of action under 42 U.S.C. § 1983 and 20 U.S.C. § 1232.

[8] Two weeks after the trial court granted Murphy's motion for summary judgment dismissing Bauer's defamation claim, Bauer filed a motion for leave to amend the complaint to state a claim for intentional infliction of emotional distress. Thus, the "medical treatment" evidence relating to that claim was not before the trial court when it granted summary judgment on the defamation claim.

528

persuaded us that Murphy's "disgrace" remark imputed "serious sexual misconduct" to her within the meaning of the Restatement rule.

As we have noted above, the only statement specifically relating to a purported "relationship" with Coach Peckham was the announcement to the group by the athletic director, Marra, that Peckham had been suspended for having formed an "inappropriate relationship" with Bauer. Beyond that, the only discussion about Bauer before she entered the meeting took place among her teammates, several of whom were discussing among themselves various occasions on which Bauer and Peckham had been seen together, and some expressing the view that Bauer was "too close" to Peckham. Bauer argues from these facts that Murphy's remark that Bauer was a "disgrace" must be considered as referring to some form of sexual misconduct with Peckham.

As Murphy points out, however, slander, unlike libel, is an individual, not a joint tort. *See Hall v. Frankel*, 183 Wis. 247, 253, 197 N.W. 820, 822 (1924) ("[r]epetition of the identical slander by several persons . . . gives rise to separate, independent . . . right[s] of action for each statement").[9] If Marra's remarks, or the remarks of Bauer's teammates, about her purported relationship with Peckham defamed her, Bauer

---

[9] More recent cases from other jurisdictions also recognize the rule that slander is an "individual" tort and thus a plaintiff has a separate right of action against each person for his or her separate acts of defamation. *See, e.g., Finch v. City of Vernon*, 877 F.2d 1497, 1505 (11th Cir. 1989); *Shuping v. Barber*, 365 S.E.2d 712, 716 (N.C. Ct. App. 1988); *Bargerstock v. WGCAC*, 580 A.2d 361, 363 n.1 (Pa. Super. Ct. 1990).

was free to proceed against them.[10] There is no authority for holding Murphy liable for statements made by others at the meeting, however.[11]

Nor do we see that the context in which Murphy's remark was made adds a sexual misconduct gloss to her words. First, as the supreme court noted in *Kassowitz v. Sentinel Co.*, 226 Wis. 468, 476, 277 N.W. 177, 180 (1938), " '[w]ords which are defamatory *per se* do not need an innuendo, and, conversely, words which do need an innuendo are not defamatory *per se*.' " (Quoted source omitted.)[12]

---

[10] Indeed, Bauer named Marra as a defendant in her Second Amended Complaint. As noted, however, Bauer appeals only from the summary judgment granted in favor of Murphy.

[11] As noted, Murphy claims that her alleged "disgrace" remark came after Bauer had become angry and had challenged Murphy's team rules and coaching ability. Murphy thus argues that, in context, the remark she is claimed to have made referred as much, if not more, to Bauer's general attitude as to any purported improper relationship with Peckham.

[12] In *Kassowitz*, the plaintiff, an employee of a county hospital, attempted to establish that a written statement that he was an "arrested case of tuberculosis" was an assertion that he suffered from a "loathsome disease" within the meaning of the *per se* defamation rule. According to the supreme court, the plaintiff "resort[ed] to . . . innuendo to allege that . . . tuberculosis[ ] is loathsome and a contagious disease," and the court rejected the argument, concluding that such innuendo could not turn the words actually used into something they were not. *Kassowitz v. Sentinel Co.*, 226 Wis. 468, 476-77, 277 N.W. 177, 180-81 (1938).

Although *Kassowitz* was a case involving libel, not slander, the court stated, "It is well settled that, in matters not libelous *per se,* special damages must be pleaded." *Kassowitz*, 226 Wis. at 477, 277 N.W. at 181. The *Kassowitz* decision was later criticized by the court in *Martin*, where the supreme court clarified that "all libels [as opposed to actions for slander] are actionable

Second, we are impressed with the reasoning of the Massachusetts Supreme Court in *Bander v. Metropolitan Life Ins. Co.*, 47 N.E.2d 595, 600-01 (Mass. 1943), where the court rejected a claim that calling the plaintiff a "disgrace" constituted slander *per se*. Bander was an insurance agent who had testified before a congressional committee on certain practices employed in his agency. *Id.* at 597. At a later meeting of agency personnel, the agency manager, who was upset with Bander's testimony, told the group that Bander was "a disgrace" to the agency. *Id.* at 598. In his lawsuit against the agency, Bander claimed that the circumstances under which the statement was made impugned him in the practice of his business or profession and was thus slander *per se*. The court rejected the argument, stating:

> The word disgrace defies definition and has as many shades of meaning as there are persons who use it and occasions for its use. It is a word of "general disparagement" equally discreditable as applied to all persons and not peculiarly harmful in a financial way to insurance agents. It does not pass the test for slander per se with respect to trade or profession. The words . . . could therefore support recovery only when accompanied by proof of special damage.

*Id.* at 601 (citations omitted).

We believe the same is true here. While Murphy's alleged "disgrace" remark was made during a meeting at which the athletic director and several team mem-

---

without alleging or proving special damages." *Martin*, 15 Wis. 2d at 460-61, 113 N.W.2d at 139. Nevertheless, we find *Kassowitz* useful in analyzing whether Murphy's statement was defamatory *per se*.

bers were discussing Bauer's relationship with Peckham, it also came in the context of a heated discussion between Bauer and Murphy regarding Bauer's criticism of Murphy's abilities as a basketball coach and the rules Murphy imposed on the team. Indeed, it was after that exchange that Murphy's comment was allegedly made.

To be called a "disgrace" is generally disparaging in any context, as the *Bander* court recognized. *Bander*, 47 N.E.2d at 601. As the court also recognized, however, it is "equally discreditable as applied to all persons," *id.*, and we believe in this case that the word does not reasonably carry with it an assertion of "unchastity" or sexual misconduct, whether taken in isolation or in the context in which the remark was made.[13]

---

[13] In what appears to be a majority of cases, even words like "slut" or "bitch" have been held not to be slanderous *per se*. *See* Charles C. Marvel, Annotation, *Libel and Slander: Actionability of Charge of Being a "Slut," "Bitch," or "Son of a Bitch,"* 13 A.L.R.3d 1286 (1967). Included in the discussion is an early Wisconsin case, *Robertson v. Edelstein*, 104 Wis. 440, 80 N.W. 724 (1899), where the court ruled that calling a married woman a "bitch" was not actionable *per se* in the absence of special damage. The court stated:

> The law is well settled, and based on the experience and wisdom of centuries, that an action of slander ought not to be maintained for mere abuse and vilification, in the absence of actual special damage. Such is not its purpose, and the maintenance of such actions . . . would lead to a vast amount of unwise and unfortunate litigation. . . . An assertion merely of libidinous tendencies or general lewd conduct is not sufficient.

*Id.* at 441-42, 80 N.W. at 724-25. *See also Meyer v. Ledford*, 316 S.E.2d 804, 806 (Ga. Ct. App. 1984) (statements that a woman employee had been seen "hugg[ing] up" and "wrapped up" with a male co-worker at a convention held not to impute adultery to

We are satisfied that Murphy's alleged remark was not slanderous *per se*, and that, as a result, it is not actionable in the absence of allegations of special damage, as here. We conclude, therefore, that the trial court properly granted summary judgment dismissing Bauer's defamation action.

## II. *Tortious Interference With Contract*

As indicated, Bauer's contract interference claim is based on Murphy's remarks to Bauer's prospective roommate, which caused the prospective roommate to

---

the woman); *Morrow v. Wiley*, 423 N.Y.S.2d 658, 659 (N.Y. App. Div. 1980) (statement that a woman "often had men visitors to her apartment when her parents weren't home" held not an actionable imputation of unchastity).

We consider Murphy's "disgrace" remark to be more akin to the words of reproach, abuse, epithet or insult—such as racial epithets or gross and vulgar terms, some of them common among sports figures—that have been held not actionable absent a showing of special damages. *See, e.g., Moriarty v. Lippe*, 294 A.2d 326, 329-34 (Conn. 1972) ("big fat ape" and "stupid son of a bitch," while vulgar and abusive, not slander *per se*); *Bradshaw v. Swagerty*, 563 P.2d 511, 514 (Kan. Ct. App. 1977) ("nigger," "bastard," and "knot-headed boy," however insulting and abusive, not slander *per se*); *Stepien v. Franklin*, 528 N.E.2d 1324, 1329 (Ohio Ct. App. 1988) (description of a sports figure as "scum," "a cancer," "an obscenity," and a "pathological liar," among other things, held to be statements of opinion and thus not actionable). And we note that in *O'Loughlin v. Patrolmen's Benevolent Ass'n*, 576 N.Y.S.2d 858, 859 (N.Y. App. Div. 1991), the court held that calling an officer a "disgrace" to the entire police force was such an "indefinite," "ambiguous," and "vague" designation that it could not be assigned a precise meaning, and thus could not support an action for defamation.

533

"breach" an agreement she had with Bauer to share a leased apartment the following year. As also indicated, Bauer found another roommate and thus suffered no pecuniary loss or damage as a result of Murphy's acts. She alleged only emotional distress in her complaint, and offered no evidence of pecuniary or "special" damages in her affidavits opposing Murphy's summary judgment motion. The trial court, relying on *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368, granted the motion and dismissed the claim.

In *Anderson*, the supreme court first recognized the tort of an insurer's "bad faith refusal to honor a claim of the insured." *Anderson*, 85 Wis. 2d at 680, 271 N.W.2d at 371. The plaintiff alleged only nonpecuniary damages as a result of the insurer's alleged bad faith; as in this case, Anderson's claim was framed in terms of "mental or emotional distress." *Id.* at 694, 271 N.W.2d at 378. The portion of the opinion in *Anderson* that is especially applicable here is the court's statement of the well-recognized rules on recovery for mental or emotional distress in tort actions:

> In negligent torts, mental distress is compensable only when there is an accompanying or resulting physical injury. In intentional torts, *substantial other damages in addition to damages for emotional distress are required*. Where the tort is specifically that of the intentional infliction of emotional distress, no other damages need be alleged or proved. However, additional limitations are imposed on a cause of action for the intentional infliction of emotional distress. A plaintiff must prove [among other things] that the conduct was extreme and outrageous . . . .

*Id.* at 694-95, 271 N.W.2d at 378. The court went on to hold that neither special damages nor extreme and

534

outrageous conduct need be proved in order to maintain an action for insurer bad faith. *Id.* at 695, 271 N.W.2d at 378.

Bauer argues that the trial court's ruling in this case "exten[ds] . . . *Anderson* to tortious interference with contract claims," and, for a variety of reasons, urges us to reject such a result. We reject the argument.

Before the *Anderson* court created the bad faith cause of action against insurers, recovery for an intentional tort could only be had where special damages were proved—except in the limited class of suits for intentional infliction of emotional distress. *Anderson* extended that exception to the "new" tort of bad faith and "liberalized" it even further by holding that a claim of insurer bad faith could be maintained without proving either special damages *or* outrageous conduct.

In reality, then, it is not Murphy who is asking us to "extend" *Anderson* but Bauer herself, for she would have us do away with the special-damage rule applicable to intentional torts when the claim is one for interference with a contract, and extend the more liberal rule applicable in *Anderson*-type, bad faith actions to such claims. We cannot apply the more liberal rule without ignoring, if not overruling, an entire line of cases specifically recognizing the special-damage requirement in intentional tort cases.[14]

---

[14] Bauer cites two cases as holding that actions for tortious interference with a contract may be maintained where the only damage claimed is emotional distress. In the first, *Secord v. Chrysler Corp.*, 96 Wis. 2d 521, 292 N.W.2d 365 (Ct. App. 1980), the defendant, Martell, was sued for personal injuries caused when Martell's car, which had been parked in a lot operated by her employer, the *La Crosse Tribune,* rolled down a ramp and

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*dissenting*). Former Coach Mary Murphy concedes that in the presence of coaches and the University of Wisconsin Women's Basketball

struck the plaintiff. *Id.* at 522, 292 N.W.2d at 366. The *Tribune's* insurer, a co-defendant in the case, cross-claimed against Martell claiming, among other things, that Martell was not an employee of the *Tribune.* Martell sought to preclude the insurer from maintaining the cross-claim and various defenses against her, claiming that her attorney, who was also the insurer's attorney, had her sign an affidavit stating that she was not an employee or agent of the paper. *Id.* at 524-25, 292 N.W.2d at 367-68. Martell sought an order preventing the insurer from raising any defenses or cross-claims based on the affidavit on grounds that it had "knowingly interfered with her contractual relationship" with her attorney. *Id.* at 529, 292 N.W.2d at 369. We noted her allegation of "emotional distress" resulting from the attorney's "simultaneous representation of three clients with adverse claims," and suggested that "[t]he remedy for such harm" is not the dismissal of the insurer's cross-claim in the personal injury action, but the commencement of a separate suit against the attorney and the insurer "for any actual damages from the alleged misconduct." *Id.* at 530, 292 N.W.2d at 370. We neither considered nor ruled on any assertion that a plaintiff may recover for emotional distress alone in an action for tortious interference with a contract.

In the second case, *Badger Cab Co. v. Soule*, 171 Wis. 2d 754, 765-66, 492 N.W.2d 375, 380 (Ct. App. 1992), we were asked to extend the rule requiring an allegation of special damages in complaints for malicious prosecution to actions for tortious interference with a contract; we declined to do so. Here, however, the argument is not that Bauer failed to *allege* special damages in her complaint for contract interference, but that she concededly suffered no such damages and thus, under the cases requiring proof of special damages in intentional tort cases, she

536

Team, she stated that Amy Bauer was a disgrace to the University of Wisconsin and the basketball team. Bauer alleges in her Second Amended Complaint for defamation that:

> 8. On or about February 20, 1991, the defendant Murphy publicly asserted that [Bauer] had an improper relationship of a sexual nature with then Assistant Women[']s[ ] Basketball Coach Michael Peckham.
>
> . . . .
>
> 11. . . . During the course of this meeting [with the team] the defendant Murphy stated publicly that [Bauer] was a disgrace to the University of Wisconsin and a disgrace to the basketball team.

On summary judgment, we first examine the pleadings to determine whether the complaint states a claim. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473, 477 (1980). "A claim should not be dismissed 'unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations.'" *Id.* at 352, 294 N.W.2d at 483 (quoting *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 732, 275 N.W.2d 660, 664 (1979)).

Murphy argues that referring to Bauer as a "disgrace" was not slanderous *per se* even when the context in which the epithet was applied is considered. Murphy's alleged slanderous remark "was made in a context of a team meeting." In its oral decision, the trial court stated:

> Now in this instance we have a basic agreement as to what it is Defendant Coach Murphy purportedly said, at least for summary judgment purposes,

may not maintain the claim based on emotional distress alone. *Badger Cab* is inapposite.

537

and that is that the Plaintiff, Ms. Bauer, was a disgrace to her team and to the university. *And although it is disputed that the statement was actually made,* the statement was made in a context of a team meeting following an announcement by the women's athletic director, Ms. Marra, that Coach Peckham had been suspended for an inappropriate relationship with a player, which all of those present at the meeting knew to be [Bauer] from circumstantial, the circumstantial surroundings, given the fact that she was told not to attend the meeting and so forth, as well as prior suspicions on the part of the players.

(Emphasis added.)

The trial court clearly intended its oral ruling to apply to the question of privilege and not to the question of whether Murphy's statement was slanderous *per se*. The majority does not address the question of privilege and I confine my dissent to the majority's conclusion that Murphy's description of Bauer as a disgrace to the team and to the University was not slanderous *per se*.

Generally, a defamatory communication must be a statement of fact. WIS J I—CIVIL 2500. Murphy argues that her communication was merely an "evaluative opinion" and even if directed toward Bauer's relationship with the assistant coach, it was merely "rhetorical hyperbole" and not actionable. However, "communications are not made nondefamatory as a matter of law merely because they are phrased as opinions, suspicions or beliefs." *Converters Equip. Corp. v. Condes Corp.*, 80 Wis. 2d 257, 263-64, 258 N.W.2d 712, 715 (1977).

Murphy can hardly claim that she intended her communication to express her opinion as to Bauer's performance as a member of the team. The record con-

tains numerous newspaper articles reporting the suspension of Peckham and Bauer's possible involvement with Peckham in an intimate relationship. Further, Murphy deposed that the purpose of the team meeting was not to discuss Bauer's performance as a basketball player or her fidelity to the team, but was intended specifically to deal with the fact that Peckham had been suspended because of his improper relationship with Bauer. In fact, when members of the team voiced criticisms of Bauer's performance as a member of the team, Murphy brought them back to the issue of Bauer's improper relationship with Peckham. In her deposition, Murphy was asked the following question and gave the following answer:

Q   . . . Do you recall there coming a point in the meeting when people had been talking about whether Amy passed the ball enough and various aspects of her social life, where you redirected the conversation to the situation involving Michael Peckham?

A   Yes.

She also deposed as follows:

Q   And you didn't offer them any guidance, did you?

A   Yes, I did. I wanted a discussion of what was going on.

Q   Right. The only guidance that you offered them was when they seemed to be avoiding talking about the subject of Peckham and Amy Bauer you redirected them into that subject, didn't you?

A   Correct.

Murphy argues that an expression of opinion generally cannot be the basis of a defamation action. *See* WIS J I—CIVIL 2500. Where the defamer departs from expressing "pure opinion" and communicates what the courts have described as "mixed opinion," however, liability may result. *Id.* "Mixed opinion" is a communication which blends an expression of opinion with a statement of fact. *Id.* This type of communication is actionable if it implies the assertion of undisclosed defamatory facts as the basis of the opinion. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 566 (1977)).

Murphy's argument that an "opinion" cannot be actionable was rejected by the United States Supreme Court in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). *Milkovich* involved a media defendant. Respondent had authored an article implying that Milkovich, a local high school wrestling coach, lied under oath in a judicial proceeding about an incident involving petitioner and his team which occurred at a wrestling match. The Court granted certiorari to consider whether there was a constitutionally required "opinion" exception to the application of a state's defamation laws. *Id.* at 10. The Court concluded that, "[w]e are not persuaded that, in addition to these protections, an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment." *Id.* at 21.

"These protections" included: (1) the requirement that a public official or figure or a private person involved in an issue of public concern show that a defamatory falsehood relating to his or her official conduct must be made with "actual malice," *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), and *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 155

(1967); (2) such showing of malice must be made by clear and convincing evidence, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974); (3) the *New York Times* test applies to criticism of public figures "who are nevertheless intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large," *Curtis Publishing*, 388 U.S. at 164 (Warren, C.J., concurring); (4) "the common-law presumption that defamatory speech is false cannot stand when a plaintiff seeks damages against a media defendant for speech of public concern," *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986); (5) rhetorical hyperbole or vigorous epithets are not actionable, *GreenBelt Coop. Publishing Ass'n, Inc. v. Bresler*, 398 U.S. 6, 13 (1970); (6) "in cases raising First Amendment issues . . . an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression,' " *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499 (1984) (quoting *New York Times*, 376 U.S. at 284-86). *Milkovich*, 497 U.S. at 14-17.

In *Milkovich*, the Court noted that comment (a) to the Restatement stated that the common law generally did not place any restrictions on the type of statement that could be actionable other than that the defamed private citizen had to prove that a false publication would subject him or her to hatred, contempt or ridicule. *Id.* at 12-13 (quoting *Gertz*, 418 U.S. at 370 (White, J., dissenting)). However, as *Milkovich* noted, because of concerns that unduly burdensome defamation laws could stifle valuable public debate, the privilege of "fair comment" was incorporated into the

common law as an affirmative defense to an action for defamation. *Id.* at 13. The privilege of "fair comment" was employed to strike the appropriate balance between the need for vigorous public disclosure and the need to redress injury to citizens wrought by invidious or irresponsible speech. *Id.* at 14.

The Court traced the "constitutional evolution" which restricted recovery by public officials and public figures, and private individuals in defamation actions involving matters of public concern. *Id.* at 14-16. The Court also traced the constitutional limits on the *type* of speech which may be the subject of state defamation actions. *Id.* at 16-17. No liability attaches for utterances of words which "even the most careless reader must have perceived . . . [as] no more than rhetorical hyperbole, [or] a vigorous epithet . . . ." *Id.* at 17 (quoting *Greenbelt Coop.*, 398 U.S. at 13-14).

The Court also determined that "in cases raising First Amendment issues . . . an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.' " *Id.* at 17 (quoting *Bose Corp.*, 466 U.S. at 499 (quoting *New York Times*, 376 U.S. at 284-86)). I conclude from my review of the record that a judgment that Murphy defamed Bauer would not intrude upon Murphy's right to free expression.

The *Milkovich* Court rejected respondent's argument that the Court should recognize, in addition to the established safeguards, another First-Amendment-based protection for defamatory statements which are categorized as "opinion" as opposed to "fact." 497 U.S. at 17-18. Respondents relied on the dictum of *Gertz* that "[u]nder the First Amendment there is no such thing as a false idea." *Id.* (quoting *Gertz*, 418 U.S.

at 339-40). The Court concluded that, read in context, the *Gertz* dictum "was merely a reiteration of Justice Holmes' classic 'marketplace of ideas' concept." *Id.* at 18 (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)).

The *Milkovich* Court concluded: "Thus, we do not think this passage from *Gertz* was intended to create a wholesale defamation exemption for anything that might be labelled 'opinion.' " *Id.* The Court said that "[n]ot only would such an interpretation be contrary to the tenor and context of the passage, but it would also ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact." *Id.* To illustrate its point, the Court stated that "[i]f a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth." *Id.*

The *Milkovich* Court rejected respondent's suggestion that the Court should rely on factors developed by the lower courts in deciding whether an alleged defamatory utterance is "opinion" or "fact." 497 U.S. at 19. The Court said that the breathing space which freedom of expression requires in order to survive "is adequately secured by existing constitutional doctrine without the creation of an artificial dichotomy between 'opinion' and fact." *Id.*

Foremost in "existing constitutional doctrine" is the proposition that a statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least where a media defendant is involved. *Id.* at 19-20. The Court reserved judgment on cases involving nonmedia defendants. *Id.* at 20 n.6.

It would be charitable to characterize Murphy's alleged defamation as "a statement on matters of pub-

lic concern." However, accepting that proposition, it is apparent that Murphy's statement may be provable as false. Imbedded in Murphy's expression of contempt for Bauer is her belief that Bauer engaged in an illicit course of sexual conduct with the assistant coach. That accusation may be provable as false.

Next, the *Milkovich* Court stated that a "line of cases provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual." 497 U.S. at 20 (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)).

Further, the Court concluded that the *New York Times-Butts-Gertz* culpability requirements insure that debate on public issues remains "uninhibited, robust, and wide-open." *Id.* (quoting *New York Times*, 376 U.S. at 270). Thus, where a statement of "opinion" on a matter of public concern reasonably implies false and defamatory facts as to public figures or officials, or a private figure on a matter of public concern, a plaintiff must show that "the false connotations were made with some level of fault as required by *Gertz*." *Id.* at 20-21. If, as Murphy claims, Bauer is "an all-purpose public figure" or "a limited purpose public figure," she will be required to show that when Murphy termed her a "disgrace" to the team and the University because of her improper association with Peckham, Murphy knew the "false implications" of her utterance or acted with reckless disregard of the truth. *See id.* at 20.

Finally, we will be required to make an independent examination of the whole record to make sure that "the judgment does not constitute a forbidden intrusion on the field of free expression." 497 U.S. at 17 (quoting *Bose Corp.*, 466 U.S. at 499 (quoting *New York Times*, 376 U.S. at 284-86)).

544

Except for enhanced appellate review, the First-Amendment-based protections for defamatory statements categorized as "opinion" all implicate trial considerations. As in *Milkovich*, the dispositive question here becomes whether a reasonable fact-finder could conclude that the allegedly actionable statement "tends to harm one's reputation [so] as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." Wis J I—Civil 2500; *see Milkovich*, 497 U.S. at 21. I think this question must be answered in the affirmative.

The persons to whom Murphy's statement was published could not reasonably have interpreted her statement to apply to anything other than Bauer's improper relationship with Peckham. Murphy's statement that Bauer was a disgrace to the team and the University implied to the listener that she had knowledge of facts which led her to conclude that Bauer had engaged in disgraceful conduct with Peckham. In view of the rampant rumors and Murphy's instructions to the team members that they consider the improper relationship between Bauer and Peckham, the team members could not have reached any conclusion other than that Coach Murphy believed that Bauer had been involved in an improper relationship with Peckham and that her conduct was thus a disgrace to the team and the University. As Justice Holmes observed:

> A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.

*Towne v. Eisner*, 245 U.S. 418, 425 (1918), *quoted in Milkovich*, 497 U.S. at 26 (Brennan, J., dissenting).

"[T]he words alone are not determinative; the facts surrounding the publication must also be considered." *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980).

Murphy's statement can reasonably be interpreted as implying that there were facts known to her which caused her to conclude that Bauer's conduct with Coach Peckham was illicit and improper.

I conclude that we cannot dismiss Bauer's claim for damages for slander. I would then consider Murphy's other defenses: Was Bauer a public figure or a private person involved in a matter of public concern? Is Bauer's defamation action barred by *res judicata*? Is her defamation claim barred by the Seventh Amendment? May the trial record and jury verdict on Bauer's privacy claim be considered in deciding Murphy's motion for summary judgment on Bauer's defamation claim? And, should the jury's finding on Bauer's invasion of privacy claim extend to Bauer's defamation claim? Until we answer these questions, we cannot conclude this case.